PETROPOULOS ET UX. *v.* LUBIENSKI, EXECUTRIX

[No. 216, September Term, 1958.]

*Motion for rehearing filed May 14, 1959, granted solely on question of possible further reduction in amount of judgment May 20, 1959, and limited reargument heard June 2, 1959.*

*Decided June 25, 1959.*

The cause was argued and reargued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Arthur G. Lambert* (on both arguments) and *Walter S. Furlow, Jr.,* (on the original argument), with whom were *Edward S. Northrop* on the brief, for the appellants.

*Joseph B. Simpson, Jr.,* (on both arguments), with whom were *Vivian V. Simpson, H. Algire McFaul, Dayton M. Harrington* and *Simpson & Simpson* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

In a suit by Helen A. U. Lubienski, executrix of the estate of Paul S. Lubienski (the builder) against George P. Petropoulos and Georgette Z. Petropoulos, his wife (the owners) for damages arising out of the breach of a building contract, the Circuit Court for Montgomery County sitting without a jury entered a judgment in favor of the builder against the owners. The owners appealed. In addition to the initial argument, there was a limited reargument.

On April 15, 1955, the owners and builder entered into a written contract whereby the builder agreed to build a house for the owners in accordance with attached plans and specifications for $43,000, less an allowance of $350.

When the owners became dissatisfied with the builder's work in September of 1955 because requested changes had not been made and certain items of work were not in accordance with the contract, the builder submitted a bill for the "extras" he claimed. Claiming that some of the extras had not been authorized and that some of the claimed extras were not in fact extras, the owners refused to pay the bill as rendered.

When the parties were unable to adjust their differences, the owners notified the builder that they wished to have the controversy submitted to arbitration in accordance with the terms of the contract. After considerable bickering, each party chose his respective arbitrator and the two chose an umpire or referee as the third member of the panel. When differences arose between the arbitrators as to the method of procedure and the time they should devote to arriving at an award, the arbitrator chosen by the owners resigned, whereupon the owners not only claimed a right to replace their arbitrator but insisted on the selection of a new arbitration board. The builder declined to accede to the selection of a new panel and the remaining arbitrators made their report two days later. The report allowed the builder $3,475 for extras—subsequently reduced to $2,475 by the court when it declined to allow $1,000 for certain plans—which the owners would not pay. When the owners refused to accept the award for extras, the builder countered by refusing to complete the house. The

owners thereupon made other arrangements to have the house finished at a cost of $14,150 plus $1,250 for completion plans.

The builder filed suit for breach of contract on July 18, 1956. He died in March of 1957, and his executrix was substituted as party plaintiff. There were four claims in the declaration: (1) a claim for the whole contract price; (2) a claim for the extras; (3) a claim for the arbitration award; and (4) a claim for moneys payable under the common counts. The owners counterclaimed for the cost of completing the house, damages for delay in completion and the cost of correcting defective work.

At the trial the parties were able to agree and it was stipulated that the builder had expended at least $25,359.75 for materials furnished and work done in the construction of the house. In addition to this sum, the builder offered proof that he had also expended $12,624.86 for other materials, work and "administrative costs or overhead," but the trial court allowed only $10,925.11 for these additional charges. The stipulated sum, plus the additional charges allowed, totaled $36,284.86. While the record is not entirely clear, it appears —indeed it was conceded at the reargument—that this total of $36,284.86 includes the value of certain materials and work for which a promissory note of $1,784 had been given by the owners to the builder for certain extras as well as the sum of $2,475 which the arbitrators allowed for other extras. There is a dispute as to whether the note, although not paid, was included in the stipulated credits referred to below. The builder claims that it was included; the owners insist that it was not. A re-examination of the record on this point since the reargument certainly indicates that the note was not included in the stipulated sum of $31,397, representing credits due the owners. It also appears that the trial court excluded the note. In addition to the sum stipulated it was further agreed that the owners had paid $510 on account of a mechanics' lien the builder allowed to be filed against the house. And the court also allowed the owners a credit of $740 for defective work on the stairway and for other miscellaneous items. The total credits were therefore $32,647.

The trial court, in arriving at the amount of its judgment

*nisi* apparently proceeded on the theory that, the owners having refused to perform their part of the contract, the builder was entitled to rescind the contract and sue on *quantum meruit, i. e.,* for as much as he deserved. But, in addition to finding that the builder had expended $36,284.86 for materials furnished and work done and for administrative costs and overhead, the court added a 10% profit, or $3,628.48, and erroneously also added the $1,784 note and the $2,475 arbitration award—both of which, it is now conceded, were included in the figure of $36,284.86—in its computation of total charges of $44,172.34. On the excess of the charges over the credits, or $11,525.34, the court allowed interest from July 18, 1956, the date of the filing of the suit, and entered a judgment *nisi* on September 10, 1958, for $12,920.62.

The owners, contending that it was the builder, and not they, who had breached the building contract, insist that the trial court erred when it found to the contrary. The owners further contend that the court did not apply the correct measure of damages. We agree that the trial court did err in several respects, all of which can be rectified without a remand. But we do not agree that the court was wrong when it found that the owners had breached the contract.

## (i)

The owners claim that they refused to accept the arbitration award because the arbitrators refused to hear testimony as to whether the claimed extras had been authorized by the owners; because the arbitrators refused to consider the plans and specifications as a part of the building contract; because the arbitractors had included in the award a charge of $1,000 for plans which had been included in the contract price; and because the award had not been made by a panel of three arbitrators. The record shows that it was the owners, who, by letter dated October 13, 1955, had notified the builder to cease all work and to accept that letter as a demand for arbitration. The record also shows that after the owners' arbitrator had resigned, the owners, in addition to requesting an opportunity to replace him, also demanded the selection of a "new" arbitration board. The builder declined to accede to the demand for

a new board, and, when the owners refused to pay the award for extras, he would not resume the construction of the house. The trial court, which had an opportunity to see and hear the witnesses and to judge their credibility, found as a fact that the owners' refusal to pay for the extras was not justified and that the failure to accept the award constituted a breach of the contract which excused further performance by the builder, and we find nothing in the record to show that the trial court, in so finding, was clearly in error. Rule 886 a.

(ii)

The builder, as he had a right to do under the provisions of Rule 313 a, joined in one suit, as independent and alternate claims, the actions he had against the owners. Whatever may have been the rule before the adoption of Rule 313 a, *supra,* [G.R.P.P. Pt. Two, III, Rule 2(a)], with respect to an election of actions by a builder before suit is filed [see *North Bros. & Strauss v. Mallory,* 94 Md. 305, 51 A. 89 (1902)] or before trial [cf. *Kirchner v. Allied Contractors,* 213 Md. 31, 131 A. 2d 251 (1957)], it appears that under the rule permitting joinder of causes of actions it is not even necessary to put a builder to an election at the close of all the evidence when the court is the trier of the facts [but we expressly do not decide this point since it was not raised here]. In any event, the builder did not make an election and the trial court did not require him to elect between his action for damages for breach of the contract and his action of *quantum meruit* under the common counts for the value of the services performed and the outlays for materials furnished and work done. We see no reason, therefore, why the court could not under the circumstances select the measure of damages to be applied in order to arrive at a judgment *nisi* according to the evidence so long as only one measure of damages is used. While it is not entirely clear which measure of damages the trial judge intended to apply—indeed at first blush it appears she may have contemplated using parts of several measures of damages —nevertheless, when the apposite rules of law are applied to the evidence produced, it is apparent — with one exception hereinafter alluded to—that the trial court intended to and did

arrive at its judgment *nisi* by applying the law applicable when the action is on *quantum meruit*.

The three measures of damages [herein referred to as measures (i), (ii) and (iii)] generally [1] applied in suits on building contracts in this State are described in 5 Corbin,[2] *Contracts,* § 1094, thus:

> "Full performance of the construction contract by both parties would have left the building contractor in possession of the full contract price, less the entire cost of construction required of him by the contract. To put him in as good a position as this, in case of a breach by the defendant, it is necessary to let the building contractor get judgment for the full amount of the contract price promised, diminished by the amount that is saved to the building contractor by reason of his not having to complete the construction. [Measure (i)]. The amount thus saved by reason of the defendant's breach is the cost of completion by the building contractor *himself* under the circumstances that existed at the time of the breach * * *. [3, 4] (Emphasis added).
>
> * * * * *

---

1. Measures (i) and (iii) are in general use and are normally used in the alternative as they were in this case. Measure (ii) has been before this Court only once—see Note 6.

2. Other law writers have described and analyzed the same or similar and different formulas and tests or rules, but it is evident that all are designed to and do usually reach the same result. See, for example, Patterson, *Recovery for Breach of Contract,* 31 Col. L. Rev. 1286 (1931); McCormick, *Damages,* § 164 (1935); 5 Williston, *Contracts,* § 1363 (Rev. ed., 1937). See also Restatement, *Contracts,* §§ 333, 346 (2) (a), (b) and comment (h) under § 346 (2)(b), *supra.*

3. Measure (i) is the formula commonly used when the builder can prove a profit, thus: Let $BD$ = builder's damage; $C$ = contract price; $Y$ = remaining cost to complete contract. $BD = C-Y$.

4. Measure (i) in the circumstances stated in Note 3 is the simplest and best measure of damages and is generally applied where the builder can prove with reasonable certainty the cost of completing the work. See *M. & R. Builders v. Michael,* 215 Md. 340, 351, 138 A. 2d 350 (1958), and the cases therein cited. See also

"[Measure (ii)]. The rule for determining the damages recoverable by a building contractor is often stated in another form. It is said that he can recover damages measured by his actual expenditure to the date of breach, less the value of his materials on hand [if they are to be removed], plus the amount of the profit that he can prove with reasonable certainty would have been realized in case of full performance of the contract.[5] If correctly applied, this rule will attain exactly the same result as the rule previously stated. * * *[6]

* * * * *

"[Measure (iii)]. A contractor who has been wrongfully prevented by the owner from rendering substantial performance, and thus creating a right to the contract price, has, in addition to his remedy in damages as above stated, an alternative restitutionary remedy. This is quantum meruit—a judgment for the reasonable value of the work, labor, and materials actually rendered and used in performance of the con-

---

*Shapiro Eng. Corp. v. Day Co.,* 215 Md. 373, 137 A. 2d 695 (1958), which also applied the standard formula [BD $=$ C–Y] as modified by payments on account [or A] and the cost of the extra work added by subsequent oral or written contract [or E] with the result that $BD = (C+E)-(A+Y)$.

**5.** Measure (ii), symbolically stated, would be: Let BP $=$ builder's profit on full performance; Z $=$ cost of full performance; C $=$ contract price. $BP = C-Z$. If Z, the cost of full performance, is split, then X $=$ net expenditures to date of breach; Y $=$ cost to complete remainder. $BD = [C-(X+Y)]+X$. If the formula is cleared by subtraction, the result is the standard $BD = C-Y$. This formula is the same as the so-called "Connecticut Rule" [*Warner v. McLay,* 92 Conn. 427, 103 A. 113 (1918)]. See Patterson *op. cit., supra.*

**6.** Measure (ii) is somewhat similar to the test applied in *Angelozzi v. Nelson,* 156 Md. 558, 144 A. 705 (1929), which allowed the recovery of builder's profits, but in that case it appears to have been no more than a loose or careless way of instructing the jury since the profit allowed could have been included in an instruction based on measure (i). Apparently it has not had general use, probably because of its tendency to confuse the jury.

tract before the defendant's repudiation or other vital breach." [7, 8]

From what has been said it is clear that the trial court could not and did not apply measure (i) since there was no proof of what it would cost the builder to complete the house. Likewise, it is certain that the court could not and did not apply measure (ii) because, although there was proof of the builder's expenditures to the date of breach, there was no proof of the value of the materials on hand, if there were any, nor was there any proof with reasonable certainty of the profit the builder would have realized if there had been full performance of the contract. Thus, it is apparent that the trial court applied measure (iii) since there was sufficient proof to justify a recovery on *quantum meruit,* which allows the value of services actually performed, when and if proved, and the outlays for materials furnished and work done. There was ample proof of the outlays, and, while there was no substantial testimony of the value of the builder's services, there was an allowance for administrative costs or overhead. If the builder failed or overlooked to prove with certainty the value of his services, we cannot say the trial court was clearly wrong in disallowing a claim therefor. Nor is the builder entitled to a remand for the purpose of supplying the proof omitted. Moreover, even if it was the intention of the trial court, in allowing a profit of 10% on the administrative costs, overhead and outlays made, to permit recovery for services performed, the court erred when it included a *positive* profit in the judgment *nisi.*

In summary we think that the judgment appealed from erroneously included an allowance for *positive* profit in the amount of $3,628.48 and allowance for extras (including those for which the $1,784.00 note was given) in the aggregate amount of $4,259.00. All of the extras were included in the figure of

---

7. Stated symbolically, measure (iii) would simply be: Let QM $=$ quantum meruit; S $=$ value of services performed; O $=$ outlays for materials furnished and work done. $QM = S + O$. It should be noted that no profit is included in this formula.

8. As to the right to recover on *quantum meruit* in this State see *Rodemer v. Hazlehurst,* 9 Gill 288 (1850); North Bros. & Strauss v. Mallory, *supra.*

$36,284.86. The $1,784.00 note was quite properly not included among the credits allowed to the owners. The note itself should be surrendered upon payment of the judgment herein, in which the claim for which it was given is merged. Since the correct amount for which judgment should have been entered can be determined from the record, we shall reverse the judgment in part and enter judgment for the correct amount, which is calculated as follows:

Total charges due builder ................... $36,284.86
Less total credits due owners ................ 32,647.00

Balance due builder ........................ 3,637.86
Interest at 6% from July 18, 1956, to September
   10, 1958 ............................... 467.28

$ 4,105.14

*Judgment reversed in part and affirmed
as to the remainder in the amount of
$4,105.14; one-half of the costs of
this appeal to be paid by the appellants and one-half by the appellee.*