TAYLOR ET AL. *v.* UNIVERSITY NATIONAL BANK

[No. 19, September Term, 1971.]

*Decided October 13, 1971.*

The cause was argued before HAMMOND, C. J., and
BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Hyman Ginsberg,* with whom were *Ginsberg & Gins-
berg* on the brief, for appellants.

*Joe M. Kyle,* with whom were *Heise, Kyle & Jorgensen* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

University National Bank (Bank), appellee here, sued appellants David J. Taylor, Jr., (Taylor) and Marion J. Conyers, Jr., (Conyers), "both individually and as co-partners trading as Clinton House", and their respective wives, Saundra J. Taylor and Mary Louise Conyers, when 42 promissory notes connected with Clinton House retail installment sales agreements and endorsed to Bank were not paid. We shall here affirm the resulting judgment.

Taylor and Conyers were in the appliance business. They had discussions with two representatives of the bank relative to the financing of some of their conditional sales contracts. On March 4, 1968, Conyers and Taylor entered into two agreements with Bank. The first was labeled "Dealer Agreement". The first paragraph recited the desire to sell to the bank "from time to time, notes, conditional sale contracts and/or chattel deeds of trust" (paper) which would be "receive[d] from retail buyers of new television sets, stereos and other appliances and equipment attached thereto." The second paragraph causes a bit of the controversy here since it provided that the paper so purchased would be assigned to Bank without recourse to Taylor and Conyers. The agreement after providing for a reserve fund, certain warranties, certain procedures in the event of repossession, etc., concluded with a paragraph which read as follows:

> "This agreement shall be irrevocable until all 'paper' purchased hereunder by you from us shall have been paid in full to you and shall inure to the benefit of and bind your and our respective heirs, personal representatives, successors and assigns. No change, amendment or modification of this agreement shall be made or

shall be binding upon either party unless it is in writing and duly signed by us and you."

The contract bore a memorandum of acceptance by Bank on March 4. Immediately below that acceptance appears the following language:

"It is hereby mutually agreed that heretofore referenced 'Paper' may be transferred, assigned, and/or endorsed to University National Bank by either of us as individuals with full force and effect as if both were signatory."

This was signed on the same day by both Taylor and Conyers.

The second document of March 4 was styled "MEMO-RANDUM OF UNDERSTANDING". This provided for a reserve account.

On March 8 two separate loan guarantee agreements were entered into. One was executed by Conyers and his wife. "In consideration of cash advances made or to be made by" Bank "on conditional sales contracts purchased from Marion J. Conyers, Jr. and/or Mary Louise Conyers T/A CLINTON HOUSE and evidenced by the promissory notes of customers of CLINTON HOUSE, payable to the order of" Bank, Mr. and Mrs. Conyers guaranteed payment. An identical agreement was entered into on the same day by Taylor and wife.

Each of the notes sued upon was at the foot of a retail installment sales agreement. Each was payable to "Clinton House or order". Each was endorsed to Bank by Clinton House over the signature of one or the other partners. Each endorsement was "[w]ith full recourse."

The appliance business of Taylor and Conyers apparently did not prosper. In an effort to avoid their liability appellants here contend that the dealer agreement "obligated the bank to accept papers from said Marion J. Conyers, Jr. and David E. Taylor, Jr. trading as Clinton House without recourse to them until such time as said agreement was modified, in writing, by the parties

to the same"; that parol evidence showing a contrary intention was inadmissible; that "[t]he Loan Guarantee Agreement signed by all of the Appellants and not by the Appellee did not amend the Dealer Agreement, dated March 4, 1968, and did not make all of the Appellants responsible to the Appellee for all of the notes endorsed to appellee"; and that the endorsement of each of the notes by one or more of the partners trading as Clinton House did not make Messrs. Conyers and Taylor "responsible to the Appellee for the balance of any deficiency on any Conditional Sales Contract, when said endorsement was contrary to the Dealer Agreement of March 4, 1968."

In *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 106 A. 2d 50 (1954), the Court had before it a controversy between a general contractor and a subcontractor. The trial judge excluded testimony as to an alleged oral agreement varying the terms of the written contract, basing his ruling on the clause of the contracts which provided:

"No deviations from plans and specifications will be permitted without an agreement written by the General Contractor."

Judge Delaplaine said for the Court:

"It has been strenuously urged on this appeal that testimony as to the alleged oral agreement was properly excluded because of the provision in the written contract that no deviations from the plans and specifications would be permitted without the written agreement of the general contractor. We must reject that contention. The rule has been accepted by the Courts, both State and Federal, that, even though a written contract stipulates that it may not be varied except by an agreement in writing, nevertheless the parties, by a subsequent oral agreement, may modify it by mutual consent. [citing authorities].

"It has been said that there can be no more

force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing, and that every such agreement is ended by the new one which contradicts it. This view was taken by the Court of Appeals of New York in *Beatty v. Guggenheim Exploration Co.*, 225 N. Y. 380, 122 N. E. 378, 381, wherein Judge Cardozo forcefully stated: 'Those who make a contract may unmake it. The clause which forbids a change may be changed like any other. The prohibition of oral waiver may itself be waived. * * * What is excluded by one act is restored by another. * * * Whenever two men contract, no limitation self-imposed can destroy their power to contract again.'

"We hold that a subsequent oral modification of a written contract may be established by a preponderance of the evidence. *Achenbach v. Stoddard*, 253 Pa. 338, 98 A. 604; *United Steel Co. v. Casey*, 6 Cir., 262 F. 889, 891. Of course, if the written contract provides that it shall not be varied except by an agreement in writing, it must appear that the parties understood that this clause was waived. However, such a clause may be waived by implication as well as by express agreement." *Id.* at 78-79.

We commented in *Pumphrey v. Pelton*, 250 Md. 662, 670, 245 A. 2d 301 (1968), that the conduct of parties to a contract may be evidence of a subsequent modification of their contract, citing 2 *Williston on Contracts* § 623 (3rd ed. Jaeger 1959); *Saul v. McIntyre*, 190 Md. 31, 36, 57 A. 2d 272 (1948); *Evergreen Amusement Corporation v. Milstead*, 206 Md. 610, 616-617, 112 A. 2d 901 (1955); and *Solomon's Marina, Inc. v. Rogers*, 221 Md. 194, 198, 156 A. 2d 432 (1959).

The original loan agreement did not oblige Bank to buy paper, it merely prescribed the terms upon which paper might be sold. There was no provision which would

have prevented Bank from rejecting paper. What here took place was a modification of the contract; first by the execution of the loan guarantee agreement and then by the very act of negotiating the notes to the Bank which notes provided for recourse. A contention that such modifications required an affirmative contract in writing executed by Bank must fall under the holding in *Freeman*. There was sufficient evidence of the modification.

The argument of appellants that the fact that the loan guarantee agreement spoke of notes which were "payable to the order of" Bank as being the notes which were guaranteed and that this guaranty does not apply to notes which were originally payable to Clinton House but were assigned to Bank is not tenable. By the terms of the agreement it was to apply to conditional sales contracts originally executed between Clinton House and their customers. Notes in connection with any such contracts obviously would originally be payable to Clinton House. Customers would not be making notes payable directly to a bank as a part of a conditional sales contract. The only possible meaning of the guaranty is that it applied to notes such as the notes in question. In any event, once the contracts were assigned to Bank and the notes endorsed, the indebtedness became payable to the order of Bank, thereby satisfying the literal requirements of the guaranty.

A bank official was permitted over objection to testify that it was not originally contemplated by the Bank that any of the financing of Clinton House appliance sales would be accepted by the bank without personal endorsement and personal guarantee. We are not obliged to consider the contention that this evidence was inadmissible since this evidence was not necessary to our holding here. Therefore, its admission was not prejudicial.

*Judgment affirmed; appellants to pay the costs.*