MARTIN J. HOFFMAN ᴇᴛ ᴜx. *v.* CHARLES
E. GLOCK ᴛ/ᴀ Gʟᴏᴄᴋ Cᴏɴsᴛʀᴜᴄᴛɪᴏɴ
Cᴏᴍᴘᴀɴʏ

[No. 636, September Term, 1973.]

*Decided February 20, 1974.*

The cause was argued before GILBERT, MENCHINE and MOORE, JJ.

*Gilbert Rosenthal* for appellants-cross-appellees.

*T. Carroll Brown* and *Franklin S. Tyng* for appellee-cross-appellant.

GILBERT, J., delivered the opinion of the Court.

The appellants-cross-appellees, Martin J. Hoffman and Norma M. Hoffman, his wife, entered into an agreement with appellee-cross-appellant, Charles E. Glock t/a Glock Construction Company, whereby Glock agreed to erect a house for the Hoffmans in consideration of the payment of the sum of forty-four thousand, nine hundred dollars ($44,900.00), plus extras, to Glock by the Hoffmans. The house was to be built in accordance with a set of drawings prepared by Home Planners Inc. of Detroit, Michigan, design number 1270, as amended. Initially all went well until a dispute arose between the parties over the size of the fireplaces. That controversy became heated and the matter reached litigation. The Hoffmans sued for specific

performance of the construction contract and also sought a monetary decree for damages allegedly suffered by them. Glock filed a counterclaim for breach of contract. The matters were heard jointly in the Circuit Court for Harford County by Judge Albert P. Close who decided both cases adversely to the respective plaintiffs. Each, feeling singed by the decision of the trial judge, has appealed to this Court.

The appellants-cross-appellees raise three contentions. They aver that Judge Close erred (1) in allowing the appellee to testify in reference to two of the appellee's exhibits, (2) in finding that the appellants-cross-appellees breached the contract rather than the appellee and (3) in holding that the appellants-cross-appellees were not entitled to damages. Appellee-cross-appellant asserts, on the other hand, that the trial judge (4) erroneously denied the counterclaim and (5) the costs in the trial court should not have been divided between the parties.

Questions 1, 2 and 4 will be considered together. Question 3, because of our disposition of question 2, will not be considered. Issue 5 will be discussed separately hereinafter.

At the trial two sets of drawings bearing the design number 1270 were admitted into evidence. One set introduced by the Hoffmans contained no notations other than those made by the Home Planners Inc. from whom they had been purchased. The other set, under attack here, was introduced by the appellee. A vast number of changes is noted thereon. The changes have been made in pencil, red ink, blue ink and green ink. No testimony was offered as to what significance, if any, the four different colors had. Neither set of plans was signed by the parties. Glock also offered into evidence a set of drawings known as "G-4" which he says were a simplified version, for construction purposes, of plan number 1270. Some of the changes as noted on Glock's set of number 1270 were admitted to by the Hoffmans, but others were denied. Glock said that all of the changes were made with the complete understanding and acquiescence of the parties. Attached to the contract for the erection of the house was a list of some thirty-six (36) items. Number 32 of that list provided:

> "Any changes, requested by the Purchasers, must be in writing with payment prior to work being performed."

The items enumerated on the list are not in dispute nor as Judge Close said:

> " . . . is there any dispute over numerous other changes, which were not contained in the written contract or list. These other changes in original plan 1270 which were not in writing were noted on the original plan 1270, were in fact executed by [Glock], were accepted by the [Hoffmans] and were orally acknowledged by the [Hoffmans] at trial."

There was testimony from Mr. Hoffman that he "questioned" the use of trusses for the garage roof set twenty-four inches apart rather than ceiling joists sixteen inches apart as called for in the original plan 1270. Testimony from an expert was proffered that twenty-four inches is the standard separation for trusses and a further proffer that a licensed engineer would testify that such construction was structurally sound. Mr. Hoffman admitted, in any event, that up until the time that the fireplaces were built he had no complaints concerning Glock's work. According to Glock, and going to the crux of the problem that seemingly created this controversy, Mr. Hoffman acknowledged to Glock that he, Hoffman, had agreed to thirty-six inch fireplaces but that his wife did not like the thirty-six inch fireplaces and "he had to live with her." Judge Close found as a fact based upon the evidence presented in the case "and the course of conduct between the parties, that the Hoffmans did orally agree to 36 inch fireplaces." Because of Mrs. Hoffman's dissatisfaction with the smaller fireplaces, Glock agreed that he would demolish them and construct fireplaces that were forty-eight inches wide. To do so, Glock opined, would cost fifteen hundred dollars ($1,500.00). Glock offered to assume five hundred dollars ($500.00) of the cost if the Hoffmans paid an additional one thousand dollars ($1,000.00). The Hoffmans refused to pay. Thereafter Glock wrote the Hoffmans a

letter in which he complained about the lack of progress on the house because of the indecisiveness on the part of the Hoffmans. Glock testified that he received no answer to his letter and that although he was ready, willing and able to proceed, he was unable to do so because of the failure of the Hoffmans to make decisions and because of the disagreement over the fireplaces.

In July of 1971 the Hoffmans retained Charles F. Kraus Corporation to complete the job for approximately thirty-two thousand dollars ($32,000.00). At that point in time Glock had been paid twenty-eight thousand, six hundred four dollars and thirty-two cents ($28,604.32) on a contract price of forty-four thousand, nine hundred dollars ($44,900.00). Included in the total payments to Glock were one thousand, one hundred fourteen dollars ($1,114.00) in extras.

Notwithstanding a written agreement that any change to a contract must be in writing, the parties by subsequent oral agreement and by their conduct may waive the requirements of a written contract. Judge Smith, speaking for the Court in *Taylor v. University Nat'l Bank*, 263 Md. 59, 282 A. 2d 91 (1971) said, at 63:

" . . . that the conduct of parties to a contract may be evidence of a subsequent modification of their contract. . . ."

The Court, in *Taylor*, cited *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 106 A. 2d 50 (1954), wherein it is stated, at 79:

"We hold that a subsequent oral modification of a written contract may be established by a preponderance of the evidence. *Achenbach v. Stoddard*, 253 Pa. 338, 98 A. 604 [(1916)]; *United Steel Co. v. Casey*, [262 F. 889, 891 (6th Cir. 1920)]. Of course, if the written contract provides that it shall not be varied except by an agreement in writing, it must appear that the parties understood that this clause was waived. However, such a clause may be waived by implication as well as by express agreement."

*See also Chas. Burton Bldrs. v. L and S Constr.*, 260 Md. 66, 271 A. 2d 534 (1970) and *Bartlett v. Stanchfield*, 148 Mass. 394, 19 N. E. 549 (1889). Mr. Justice Holmes, then a member of the Supreme Judicial Court of Massachusetts said in *Bartlett* at 395:

> "Attempts of parties to tie up by contract their freedom of dealing with each other are futile. The contract is a fact to be taken into account in interpreting the subsequent conduct of the plaintiff and the defendant, no doubt. But it cannot be assumed, as matter of law, that the contract governed all that was done until it was renounced in so many words, because the parties had a right to renounce it in any way and by any mode of expression they saw fit. They could substitute a new oral contract by conduct and intimation, as well as by express words."

Whether or not the subsequent conduct of the parties amounts to a waiver is a question of fact to be decided by the trier of the fact. *Bartlett v. Stanchfield, supra; Freeman v. Stanbern Const. Co., supra.* We observe that in the instant case there is no recitation in the contract that it represents the entire agreement between the parties. Furthermore, a reading of the record makes it crystalline that the parties failed to incorporate their entire agreement into the written contract. As we have noted, Mr. Hoffman testified that many changes were agreed to orally both prior to and after the written contract had been signed and that those changes did not appear in the written contract nor on the itemized list attached thereto. All of the oral changes, according to the trial judge's finding of fact, found "expression . . . in the house itself and were accepted by the [Hoffmans]."

The Hoffmans argue that design plan number 1270 was intended to be "the means for constructing the home of the Appellant." They assert that Glock could have protected himself by the simple method of having the parties sign or initial each page of the plans. The Hoffmans contend that the contract was unambiguous, needed no parol evidence to

explain it, and that there was no room for construction by the trial court. The Hoffmans reason that "Plan 1270 meant just that — Plan 1270." In the light of the testimony that there were agreed changes to plan 1270, both prior to and after the execution of the written agreement, the appellants' argument is much akin to "whistling in the wind." The changes were never reduced to writing, so that the written agreement patently could not contain the entire agreement. The dispute over what was and was not agreed to by the parties, placed the court in the position of having to determine what actually was the agreement.

Judge Close found that the Hoffmans, "by their acceptance of numerous changes which were orally requested, waived the requirement that changes be requested in writing and are estopped from trying to enforce the writing requirement as to changes which they now deny were requested." *See Taylor v. University Nat'l Bank, supra.* We find no error in the trial court's admission into evidence of the appellee's "plan 1270".

Appellee's exhibit 3, styled by Glock as "G-4", was admitted into evidence without objection. Later counsel stated, "If I recall correctly . . . we had an objection to G4." Our perusal of the record fails to reveal such an objection so that there is nothing for us to review. Rule 1085. Even assuming, however, that an objection had been timely made, then under Glock's testimony "G4" was a part and parcel of the entire contract and hence admissible.

The Hoffmans next argue that "[t]he failure of [Glock] . . . to abide by the plans and specifications amounted to a breach of contract by [Glock]" thus entitling the Hoffmans to a monetary award for damages. Where Hoffmans' argument falls short is that it uses as its predicate unauthorized deviations from the original "Plan 1270" and from the itemized list. The trial court, however, found as a fact that Glock had complied with the terms of the contract as the court found the contract to be. The judge stated:

"It is obvious that the minor differences in measurement which were not specifically agreed to were the result of the substantial change in the

> fireplace area requested by the [Hoffmans]. The flue liners were smaller because the fireplaces were smaller. The fireplace was off center in the living room wall because the book cases were omitted in the living room (per request of [Hoffmans'] Item Number 6) making the living room wall longer. The family room fireplace was 33 inches instead of 36 inches because the wood box was added."

As we have previously observed, item 32 of the "list" provides:

> "Any changes, requested by the Purchasers, must be in writing with payment prior to work being performed."

The trial court held that "while it was certainly physically possible . . . for [Glock] to proceed with construction without a resolution of the fireplace dispute, the fact remains that [Glock] did not receive decisions [from the Hoffmans] with regard to other items. . . ." Judge Close then concluded that Hoffmans' failure to furnish the information requested by Glock manifested a refusal to allow Glock to proceed. The judge, based upon the evidence presented to him during the trial, said:

> " . . . [I]n view of [Glock's] willingness to complete the house and the [Hoffmans'] insistence that 'corrections' [of defects which the court found did not exist] be made at no additional cost to [Hoffmans] . . . [Glock] was justified in not completing the house."

The trial court found that the Hoffmans had breached the contract, and we cannot say that his findings were clearly erroneous. Maryland Rule 1086.

Glock, apparently of the opinion that "a good offense is the best defense" filed a counterclaim in which he sought to recover seventy thousand dollars ($70,000.00) damages from the Hoffmans. His proof at trial was deficient because of his failure or inability to supply an accurate measure of damages under any of the three theories advanced in

*Petropoulos v. Lubienski,* 220 Md. 293, 152 A. 2d 801 (1959). The three measures of damages set forth in *Petropoulos, supra* at 300-302, were stated in *Corbin, Contracts* (1951). 5 *Corbin, supra* at § 1094 states:

### [Measure 1]

"Full performance of the construction contract by both parties would have left the building contractor in possession of the full contract price, less the entire cost of construction required of him by the contract. To put him in as good a position as this, in case of a breach by the defendant, it is necessary to let the building contractor get judgment for the full amount of the contract price promised, diminished by the amount that is saved to the building contractor by reason of his not having to complete the construction. The amount thus saved by reason of the defendant's breach is the cost of completion by the building contractor himself under the circumstances that existed at the time of breach. . . .

### [Measure 2]

The rule for determining the damages recoverable by a building contractor is often stated in another form. It is said that he can recover damages measured by his actual expenditure to the date of breach, less the value of his materials on hand, plus the amount of the profit that he can prove with reasonable certainty would have been realized in case of full performance of the contract. If correctly applied, this rule will attain exactly the same result as the rule previously stated. . . .

\* \* \*

### [Measure 3]

A contractor who has been wrongfully prevented by the owner from rendering substantial performance, and thus creating a right to the

contract price, has, in addition to his remedy in damages as above stated, an alternative restitutionary remedy. This is quantum meruit — a judgment for the reasonable value of the work, labor, and materials actually rendered and used in performance of the contract before the defendant's repudiation or other vital breach." (Footnotes omitted).

As to the first measure of damages, Glock did not demonstrate what it would cost him to complete the house. *See also M & R Builders v. Michael,* 215 Md. 340, 138 A. 2d 350 (1958); *North Bros. & Straus v. Mallory,* 94 Md. 305, 51 A. 89 (1902). Insofar as the second measure is concerned, the proof by Glock did not establish the profit that he would have realized had there been full performance of the contract. Glock, in regard to the third measure, failed to show that the value of the work, labor and the materials actually rendered was greater than the sum that he had already been paid. We perceive no error in the denial of Glock's counterclaim.

Lastly, Glock argues that costs in the trial court should not have been divided between the parties, but, he asserts, they should have been assessed against the Hoffmans. Md. Rule 604 a provides:

"Unless otherwise provided by law, or ordered by the court, the prevailing party shall be entitled to the allowance of court costs, which shall be taxed by the clerk and embraced in the judgment. The action of the clerk in taxing costs may be reviewed by the court on motion."

The allowance of cost is within the sound discretion of the trial court and will not be disturbed on appeal unless that discretion has been abused. *Sinclair Estates v. Chas. R. Guthrie,* 223 Md. 572, 165 A. 2d 775 (1960). As a general rule, however, costs should be paid by the losing party. *Urquhart v. Alexander,* 218 Md. 405, 147 A. 2d 213 (1958). A similar rule is applicable in this Court. Md. Rule 1082. In the trial court, Hoffmans' suit against Glock and Glock's

counterclaim against the Hoffmans were tried together. The Hoffmans lost the case in which they were the plaintiffs and Glock lost his counterclaim against the Hoffmans. The net result was that each party to this suit was the "prevailing party" in the case in which the party was a defendant, and the losing party in the case in which the party was the plaintiff. In this Court the cross-appellant, Glock, avers that the "costs should be assessed against the [Hoffmans] as the losing parties [in the trial court] since any other action would infer (sic) that the lower Court is entitled to assess such costs in an arbitrary manner. . . ." We disagree. We think Judge Close followed both the spirit and the letter of Rule 604 a in apportioning the costs.

There is another matter of costs before us as a result of a "Petition for Awarding Costs" on appeal. The record discloses that on November 13, 1972 Judge Close filed an opinion. An appeal was entered on December 12, 1972 to the Court of Appeals of Maryland, because at that time, this Court had no jurisdiction over the subject matter. By Laws of 1973, ch. 56, effective July 1, 1973, jurisdiction was transferred to this Court. According to the Hoffmans, at the time they filed the notice of appeal they "requested the Court Clerk not to file the Appeal until a Final Order had been filed by Judge Close." When notice of appeal was received from the clerk, counsel apparently assumed that a final order had been entered. Thereafter, on September 11, 1973, as a result of reading Glock's brief, Hoffmans' counsel became aware that there was no final order and the appeal was premature. *Stitzel v. Kurz,* 18 Md. App. 525, 308 A. 2d 430 (1973). The Court of Appeals dismissed Hoffmans' appeal without prejudice and remanded the case to the trial court. Following the entry of a final judgment, appeal was taken to this Court and a cross-appeal was also noted.

The Hoffmans argue that, because Glock refused to agree to a statement of the case, they were put to the unnecessary expense of printing "seventy-three . . . pages of Record Extracts." Therefore, the Hoffmans reason Glock should pay all or part of the costs. We think the Hoffmans misconstrue the purpose of court costs.

"Costs as between party and party are given by the law as an indemnity to the person entitled to them: they are not imposed as a punishment on the party who pays them, or given as a bonus to the party who receives them." *Harold v. Smith*, 5 Hurlstone and Norman 381, 385 (Eng. Ct. of Exchequer 1860).

We decline to follow the Hoffmans' suggestion that we assess "all of the costs against the Appellee [Glock] in the event that the Appellee [Glock] is the losing party, or [apportion] the costs between the parties, in the discretion of . . . [the] Court, in the event that the [Hoffmans] are the losing parties." Such a suggestion is closely related to the cliche, "Heads I win, tails you lose." Moreover, Rule 1026 g, which is the same as Court of Appeals Rule 826 g, merely authorizes the parties to agree, with the approval of the lower court, to a statement of the case provided the statement shows how the questions arose and were decided, and sets forth the matters and facts necessary to a disposition by the appellate court. Rule 1026 g does not provide a sanction for failure to agree to its use. A party is not required to accept the suggestion of his opponent to enter into a statement of the case. The purpose of the rule is obviously to save time and money, but its use is permissive, not mandatory. That the parties do not agree upon a statement of the case is a risk they run in the assessment of costs.

The motion to assess costs against the appellee is denied.

*Judgments affirmed.*

*Costs in the original appeal to be paid by the appellants and costs in the cross-appeal to be paid by the cross-appellant.*