BALTIMORE COUNTY, MARYLAND *v.* XEROX CORPORATION

[No. 653, September Term, 1978.]

*Decided February 9, 1979.*

466

The cause was argued before MELVIN, LISS and COUCH, JJ.

*John A. Austin, Assistant County Solicitor for Baltimore County,* with whom was *J. Carroll Holzer, County Solicitor,* on the brief, for appellant.

*Benjamin R. Goertemiller* and *Charles C. Shelton,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

In February 1978 appellee, Xerox Corporation (hereinafter referred to as Xerox), filed this action for injunctive and declaratory relief in the Circuit Court for Baltimore County to determine its liability to Baltimore County [1] (hereinafter

---

1. The question of Xerox's liability as to the State's portion of the taxes, due through the County as the collection agent for the State, was resolved by a separate agreement between the State and Xerox.

referred to as the County), appellant, for personal property taxes due on Xerox duplicating machines located in the County for fiscal years 1974 through 1977. The trial judge granted an interlocutory injunction restraining the County from bringing a tax collection suit against Xerox for its 1974 through 1976 [2] taxes prior to final adjudication of the rights of the parties in the declaratory action.[3] Following a hearing on Xerox's motion for summary judgment on May 31, 1978, the trial judge entered a judgment nisi in favor of Baltimore County in the amount of $256,598.70. After correction of mathematical errors, judgment absolute was entered in the amount of $270,064.82 in favor of the County, with costs assessed against the County.

Some discussion of Xerox's previous litigation with the State Department of Assessments and Taxation (hereinafter the "Department"), which precipitated the present controversy, is necessary to a full understanding of the present posture of this case. Xerox, having paid the full amount of taxes assessed against it to the Counties and the State for tax years 1970 through 1973, protested the Department's personal property tax assessment[4] on its duplicating machines for those years. During that time the Department had assessed duplicating machines located with Xerox's customers throughout the State at sales price, which resulted in a higher assessment than the previous years' (up to and including 1969) assessment based on Xerox's manufacturing costs. Xerox's protest was the subject of proceedings in the Maryland Tax Court, which issued an opinion in favor of Xerox. The Department appealed to the Court of Appeals in *State Department of Assessments & Taxation v. Greyhound Computer Corp.,* 271 Md. 575, 320 A.

---

2. All references are to fiscal years.

3. The County appealed the interlocutory injunction to this Court in Baltimore County, Md. v. Xerox Corp., C.S.A., No. 238, Sept. Term, 1978. While the appeal was pending, the lower court rendered a final determination of the rights of the parties, which caused the interlocutory injunction to dissolve by its own terms. We dismissed the appeal as moot on July 31, 1978.

4. Art. 81, § 13 (b) (5) of the Maryland Code provides that tangible personal property of a corporation shall be valued and assessed for purposes of State and County taxation by the State Department of Assessments and Taxation.

2d 40 (1974).[5] The Court of Appeals remanded for further evidence, which was taken by the Tax Court on March 17, 1976. Before a second opinion could be issued by the Tax Court, Xerox and the Department entered into a settlement agreement which acknowledged the Department's overassessment of Xerox's duplicating machines throughout the State. Based upon this agreement the Tax Court issued orders for each year in controversy [6] reducing the assessment for Xerox's machines throughout the State. During the pendency of the former litigation the Department withheld its assessments for tax years 1974 through 1976. As a result, Xerox's payment of its 1974 through 1976 Baltimore County and State personal property taxes was also suspended. Final assessments for the period 1970 to 1976 were not certified by the Department to Baltimore County until April 18, 1977.

The events which precipitated the present controversy revolve around the Baltimore County tax bills for 1974-1976, amounting to $601,302.07, sent to appellee following the certification. The County gave no indication to Xerox as to how it proposed to handle the refund of excess tax money it had collected from Xerox attributable to the overassessment for the earlier years.[7] On May 20, 1977, Xerox tendered payment of the County's 1974-1976 tax bills by taking credit for the refund with interest [8] and remitting to the County a check for the amount of tax bills in excess of the refund. The County returned the check and requested that Xerox pay the gross amount. The County advised Xerox that a "formal request" was necessary before it would refund the money on deposit. The County took the position that refunds

---

5. This appeal was taken pursuant to the procedures existing prior to the Court of Appeals decision in Shell Oil Co. v. Supervisor, 276 Md. 36, 343 A. 2d 521 (1975).

6. Four orders were issued covering fiscal years 1970-71, 1971-72, 1972-73, 1973-74.

7. An affidavit submitted by Xerox informs us that all other counties in the State resolved the refund after the Department's final assessment by either (1) sending Xerox a check for excess taxes Xerox had paid, and Xerox's sending a check to the County or Baltimore City for taxes owed, or (2) retaining excess tax money belonging to Xerox as a partial payment of current taxes and Xerox submitting a check for the balance.

8. Art. 81, § 261, governing refunds after entry of a Tax Court order, allows 6% interest to be collected on refunds.

for prior years could not be offset against valid tax bills for later years and that, upon payment of the full amount due for outstanding bills, the County would review the request for a refund "in accordance with the law". According to the County, the formal refund procedures of Md. Ann. Code, Art. 81, §§ 213-219 (1975 Repl. Vol.), applied to the refund of excess tax money pursuant to the Tax Court order. Xerox made its request by letter, simply asking that the County make provision to repay Xerox the excess tax money. Xerox also advised the County that the tender remained open and available to the County.

In January, 1978, the County informed Xerox that a delinquent notice would be sent for tax years 1974-1976 and that a collection suit would be brought if not honored. The County subsequently issued a delinquent notice, dated February 1, 1978.

Also in January, 1978, the tax bill for 1977 was sent to Xerox, which promptly tendered payment. The County notified Xerox that it would not accept payment until all open tax matters for previous years were resolved.

Xerox then filed the present action. On its motion for summary judgment the trial court ruled as follows:

> i. The final Maryland Tax Court orders of March 7, 1977 were a 'final determination' of Xerox's tax liability and binding on Baltimore County.

> ii. Baltimore County was obligated under Article 81, § 261, to return to Xerox excess tax money which Xerox had paid, as determined under the Maryland Tax Court order.

> iii. The refund provisions of Art. 81, §§ 213 and 214 do not apply to those excess taxes to be returned to Xerox under § 261.

> iv. Xerox could not be liable for interest on taxes until it received a tax bill and was delinquent in payment of the bill.

The County, on appeal, presents the following issues for our consideration:

I. Whether the lower court erred in assuming jurisdiction over a Bill of Complaint for Declaratory and Injunctive Relief pertaining to property tax refunds and collections in the face of specific statutory language establishing exclusive administrative procedures concerning such refunds?

II. Whether the lower court erred in granting an Interlocutory Injunction' which enjoined the executive branch of government from performing its statutory mandate in connection with tax refunds and collections?

III. Whether the judgment rendered by the lower court was procedurally defective and in error when it failed to include interest on taxes for prior years; whether the lower court's conduct of the proceedings at the trial level were such as to deny Appellant substantial fairness and procedural due process? [9]

I

A.

The core of this controversy is the County's contention that Xerox's only recourse for a refund of tax money, following a final Tax Court order, is through the statutory refund procedures set forth in Art. 81, §§ 213-219, inclusive. According to the County, Xerox's failure to exhaust these procedures precludes it from invoking the jurisdiction of the circuit court. We disagree with the County's position. Xerox has received the benefit of a final determination of overassessment by the Maryland Tax Court and, upon that determination, the refund must be paid immediately by the local taxing jurisdiction. Article 81, § 261 provides in pertinent part:

"Upon final determination of any appeal [to the

9. We have consolidated appellant's last two issues into one.

Maryland Tax Court], any money paid [by the taxpayer] in excess of the amount properly chargeable under such determination, shall be refunded with interest at the rate of six per cent (6%) per annum from the date of payment to the date of refund. . . ."

Ordinarily the word "shall" is mandatory when used in a statute, unless the context in which it is used indicates otherwise, and thus leaves little room for discretion on the part of the County taxing authorities. *See Bright v. Unsatisfied Claim & Judgment Fund,* 275 Md. 165, 169, 338 A. 2d 248 (1974); *Ginnavan v. Silverstone,* 246 Md. 500, 505, 229 A. 2d 124 (1967).

The County cannot escape the mandate of Art. 81, § 261 by resorting to the argument that the use of the term "refund" in § 261 is made with reference to the refund procedures of § 213 *et seq.* Under Art. 81, § 229 (i), an order of the Maryland Tax Court is "final and conclusive".[10]

The Court of Appeals recently examined the effect of a Tax Court order and concluded:

"The Tax Court is an administrative agency performing a quasi judicial function . . . under the provisions of Art. 81, §§ 224-231, it functions in many respects as a court . . . its 'order is final and conclusive'. . . . Particularly in light of this latter provision, we believe that the decisions of the Tax Court have res judicata effect."

*White v. Prince George's Co.,* 282 Md. 641, 658, 387 A. 2d 260 (1978). *See generally Woodlawn Ass'n. v. Board,* 241 Md. 187, 194-6, 216 A. 2d 149 (1966). Keeping in mind the admonishment that "results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language," *Schweitzer v. Brewer,* 280 Md. 430, 438-39, 374 A. 2d 347 (1977), we do not believe the General Assembly intended

---

**10.** The order becomes final thirty days after its entry provided no appeal to the circuit court is taken by either party. Md. R. B4.

appellee to exhaust two separate and distinct administrative procedures to recover the excess personal property tax which the Tax Court has finally determined to be due and owing by each taxing jurisdiction in the State.

Additional support for our resolution of this issue can be found in the language of Art. 81, § 214:

> "Whenever any person shall claim to have erroneously or mistakenly paid to the county commissioners of any county, or to the collector of such county . . . more money for ordinary county or city taxes than was properly and legally chargeable to or collectible from such person, he may file with the collector in any county . . . a written application for the refund thereof, and *if approved by such collector,* . . . the said county commissioners . . . shall levy and pay to such person any money that was so paid." (Emphasis supplied.) Art. 81, § 214 (a).

Section 214 (a) contemplates some discretion in the collector and, as we previously observed, § 261 permits no such exercise of discretion. Were Xerox to pursue this avenue it would be a useless exercise since the final Tax Court orders would have a res judicata effect, *White, supra,* upon any determination which might be made by the collector. By virtue of the Tax Court orders, Baltimore County is under a present obligation to refund to Xerox all money it has on deposit attributable to the overassessments for 1970-1973.

## B.

Appellant contends that the refund provisions of § 213 *et seq.* are the exclusive procedure for a recovery of a refund pursuant to § 261 and, as a result, the circuit court had no jurisdiction to entertain an action for declaratory relief because this case falls within the proscription of § 3-409 (b) of the Courts and Judicial Proceedings Article (1974). Section 3-409 (b) provides that, "If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

Appellee, in the original proceedings against the State Department of Assessments and Taxation, exercised its right to protest the reevaluation of its personal property before the Department (Art. 81, § 29); appealed to the Maryland Tax Court pursuant to § 258; and then, following the previously existing procedure,[11] appealed to the Court of Appeals, who remanded the case to the Tax Court. Upon the entry of the final Tax Court orders, appellee exhausted the "exclusive" statutory remedy available to it, thus the circuit court had jurisdiction over the present action. *Cf. Reiling v. Comptroller,* 201 Md. 384, 94 A. 2d 261 (1953) (taxpayer failed to pursue statutory remedy).

Appellee's prayer for a declaration as to the proper construction of Art. 81, § 261 comes well within the ambit of § 3-406 of the Courts and Judicial Proceedings Article. Section 3-406 provides:

> "Any person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations under it."

Moreover, a refund proceeding would simply not be appropriate in this case. The jurisdiction of the tax agencies is limited to assessment, valuation, and classification of real and personal property for tax purposes. *Maryland-National Capital Park and Planning Commission v. Washington National Arena,* 282 Md. 588, 597, 386 A. 2d 1216 (1977). The statutory interpretation of Art. 81, § 261 is a proper subject for judicial construction in a declaratory relief action. Cts. & Jud. Proc., § 3-406. It is not a matter which falls within the purview of a refund proceeding under Art. 81, § 213 *et seq.*

## C.

Appellant offers another jurisdictional attack upon the judgment entered below. According to the County the filing

---

11. *See* n. 5, *infra.*

of the appeal from the grant of the interlocutory injunction divested the lower court of jurisdiction. We see no merit in this contention. As a general matter the filing of a notice of appeal in a case deprives the trial court of jurisdiction to proceed further. However, there is a well established exception which permits the trial court to proceed with any other matter or issue when the appeal is taken from an interlocutory injunction. *Mangum v. Maryland State Board of Censors,* 273 Md. 176, 179-80, 328 A. 2d 283 (1974); *Smiley v. Atkinson,* 12 Md. App. 543, 549-51, 280 A. 2d 277, *aff'd.* 265 Md. 129, 287 A. 2d 770 (1972) (per curiam). The trial court in this case retained jurisdiction to proceed with the case while the appeal on the interlocutory injunction was pending.

## II.

During the course of the proceedings below, the trial court granted an interlocutory injunction preventing the County from filing a tax collection suit against Xerox until the lower court could hear the bill for declaratory judgment and render a judicial determination of the rights of the parties. On March 7, 1978, Baltimore County appealed the grant of the interlocutory injunction to this Court in *Baltimore County, Maryland v. Xerox,* C.S.A., No. 238 (September Term, 1978). The trial court rendered a judgment nisi on May 31, 1978 [12] which by its terms dissolved the interlocutory injunction. Of our own motion we dismissed Appeal No. 238 as moot on July 31, 1978, and have been given no reason by appellant to reconsider that dismissal now.

## III.

### A

Appellant claims that the "summary fashion in which the lower court conducted the hearings held in connection with these proceedings constituted a pervasive denial of

---

12. A second hearing was held to correct a mathematical error which had no substantive effect on the judgment nisi. Judgment absolute was entered on June 23, 1978.

procedural due process to the appellant." Generally, due process requires that a party to a proceeding is entitled to both notice and an opportunity to be heard on the issues to be decided in a case. *See Blue Cross of Md., Inc. v. Franklin Square Hospital,* 277 Md. 93, 101, 352 A. 2d 798 (1976) and cases cited therein.

We have no difficulty deciding that the County was afforded due process in the proceedings below. Appellant's grievance focuses upon appellee's motion for summary judgment and amended bill of complaint, both of which were filed on May 1, 1978. The bill of complaint was amended to conform with the posture of the case after the agreement between Xerox and the Comptroller's office was finalized, settling the State's portion of the 1974-1977 taxes owed by Xerox.[13] According to the appellant, the time had not yet expired for filing its answers to the amended bill of complaint and the motion for summary judgment when the trial judge, on May 23, 1978, scheduled the hearing on the motion for summary judgment for May 31, 1978.

On May 24, 1978, the appellant moved for a continuance on the grounds set out above. The motion was properly denied by the trial judge. Under the Maryland Rules of Procedure, appellant was permitted fifteen days within which to file its response to the amended bill of complaint. Md. R. 320, § d 7. Since service was accomplished by mail within the same county, Md. R. 306, § c 3, the time for filing an answer to the amended bill of complaint, Md. R. 320, § d 6, or a motion to strike, Md. R. 320, § d 5, had passed when appellant filed its motion for a continuance. A motion for continuance on an amended bill of complaint should not be granted "unless the court is satisfied that the ends of justice so require." Md. R. 320, § e 1.

We find no denial of due process on the part of the trial

---

13. Under Art. 81, § 51, the county is responsible for the collection of both State and county taxes. The County's refusal to accept tender of payment prevented the State from collecting the taxes due on duplicating machines located in the County. The agreement effectively removed the State from the present controversy.

judge in refusing to grant the motion for a continuance, particularly in light of Md. R. 320, § d 8 (b):

> "If an original party who has responded shall fail to file an additional response [to the amended bill of complaint] within the time allowed, the case shall proceed and the response previously filed shall be deemed to be a response to the amended pleading."

The County may not now complain of a denial of due process when its own lack of attention to the time requirements of the Rules of Procedure prevented it from responding to the amended bill of complaint.

Appellant's claim that the time had not yet expired for the filing of its answer to the motion for summary judgment is equally ill-fated. Preliminarily, we observe that appellant filed its answer to the original bill of complaint on March 7, 1978 and thus Rule 610, § c 2, governing the time of hearing of the motion for summary judgment, applies. The rule provides, in pertinent part:

> "Where a motion is filed after the adverse party has filed his initial pleading to such claim, *the motion, upon not less than ten days' notice by either party, may be heard at any time.*" (Emphasis supplied.)

The appellee's motion for summary judgment, in compliance with the rule, was accompanied by a notice to appellant that the motion may be heard by the court at any time after May 12, 1978. We conclude that appellant was afforded, within the confines of the Maryland Rules of Procedure, notice and an opportunity to be heard. *Blue Cross of Md. v. Franklin Square Hospital, Inc., supra.*[14]

Appellant also raises procedural defects with reference to the issuance of the interlocutory injunction. As stated previously, the issue is moot and we will not discuss it.

Appellant contends further that the assessment of the costs

---

14. Appellant has not challenged the constitutionality of the time requirements of the Rules of Procedure.

of the proceeding against it was contrary to Rule 604 of the Maryland Rules of Procedure. Rule 604 a states:

> "Unless otherwise provided by law, or ordered by the court, the prevailing party shall be entitled to the allowance of court costs, which shall be taxed by the clerk and embraced in the judgment . . . ."

Although a prevailing party is generally entitled to the allowance of court costs, *Urquhart v. Alexander,* 218 Md. 405, 147 A. 2d 213 (1958), the court may properly order the prevailing party to pay the costs under Rule 604 a. *See Hoffman v. Glock,* 20 Md. App. 284, 293, 315 A. 2d 551 (1974). The allowance of costs is within the sound discretion of the trial court and will not be disturbed on appeal unless that discretion has been abused. *Sinclair Estates v. Guthrie,* 223 Md. 572, 575, 165 A. 2d 775 (1960) (per curiam); 20 Md. App. at 293. Our review of the record persuades us that the trial court did not abuse its discretion. The entry of the monetary judgment in favor of the County belies the fact that Xerox was successful on the merits. Judgment was entered upon the grant of Xerox's motion for summary judgment. We believe Rule 604 a permits the trial judge to take into account the actual circumstances under which judgment is entered in assessing costs against a party.

## B

The trial court ruled that Xerox could not be liable for interest on unpaid personal property taxes for tax years 1974 through 1976 until it received a tax bill and was delinquent in payment of the bill. Appellant questions both the amount of interest which should be included in its refund to Xerox and the trial court's ruling that Xerox owed no interest on its 1974-76 personal property taxes. Since we are in agreement with the trial court that Art. 81, § 261 requires an automatic refund of the excess tax money to Xerox, the trial court was correct in taking into account six per cent interest on the amount of the refund in accordance with the terms of § 261 in arriving at the sum which constituted its final judgment.

Appellant's argument that the trial court erred in not allowing it interest on back taxes is similarly unavailing. Article 81, § 48 (c) is clear on the subject of when interest begins to accrue on unpaid personal property taxes:

"On the day taxes are due, liability for taxes and a first lien for their payment attach to the property. *No interest or penalties may be charged or collected on any taxes covered by this section until at least thirty days after the bill for the taxes has been mailed to the taxpayer's address....*" (Emphasis supplied.)

While a taxpayer's obligation to pay his taxes is not suspended or postponed because of the pendency of a protest or an appeal, the personal property must be legally assessed and the tax legally billed before that obligation attaches. *See Brown v. Montgomery Co.,* 30 Md. App. 107, 112-13, 351 A. 2d 156 (1976), *cert. den.,* 277 Md. 735 (1976).

The Baltimore County tax bills for tax years 1974-76 were mailed to Xerox on or about May 6, 1977.[15] The appellant's challenge to the trial court's ruling centers upon interest allegedly accumulated before that date. It is evident that Art. 81, § 48 (c) is controlling and that Xerox, therefore, incurred no liability for interest on back taxes since no interest was chargeable before the tax bills were mailed.

Appellant's final claim is that the lower court denied it substantive due process by preventing it from litigating the underlying basis for the Department's revised assessments [16] upon which the final Tax Court orders were based. Appellant states that without litigating this issue it could not determine the amount of interest allegedly due on Xerox's unpaid 1974-76 taxes.

---

15. The delay in sending out the bills was attributable to the Department's suspension of its assessment of Xerox's duplicating machines during the course of its litigation with Xerox. Baltimore County could have availed itself of the procedure set forth in Art. 81, § 49B, by which it is authorized to send a taxpayer an estimated bill based upon the previous year's assessment.

16. The revised assessments were contained in the first agreement between Xerox and the State, upon which the final Tax Court orders were based.

The final Tax Court orders are res judicata upon appellant and, as a result, it may not relitigate the underlying basis of the orders. *White v. Prince George's Co., supra.* More importantly, the General Assembly has placed within the exclusive province of the Department the assessment of tangible personal property belonging to a corporation for both State and local taxing purposes. Art. 81, § 13 (b) (5). Appellant was not denied substantive due process by the trial court.

*Judgment affirmed.*
*Costs to be paid by appellant.*