636 A.2d 487

**CROFTON PARTNERS**

v.

**ANNE ARUNDEL COUNTY, Maryland.**

**No. 687, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 28, 1994.

Certiorari Denied June 6, 1994.

234

Julie Ellen Squire (Peter E. Keith and Gallager, Evelius & Jones, on the brief), Baltimore, for appellant.

Stephen M. LeGendre, Deputy County Atty. (Judson P. Garrett, Jr., County Atty., on the brief), Annapolis, for appellee.

Argued before BISHOP, WENNER and FISCHER, JJ.

WENNER, Judge.

Although the substantive issues raised by this appeal are fairly significant, they are not nearly as significant as the procedural quagmire that we find before us. What began as a developer's test of a newly enacted Anne Arundel County tax ordinance has brought to light an apparent anomaly in the statutory scheme that provides administrative review by both the Anne Arundel County Board of Appeals (the Board) and the Maryland Tax Court of the imposition of certain local taxes.

The Anne Arundel County ordinance in question governs the assessment of charges for connection to county water and wastewater facilities. Anne Arundel County Code, Article 6, § 5–208. The ordinance was amended in 1988 to provide for a five year phase-in of increased connection fees. To accomplish this, the amount of the connection fee was tied to the "date application [for a connection permit] is made." Appellant, Crofton Partners (Crofton), was in the initial planning and permitting stages of a proposed eleven building "luxury apartment complex," to be known as Saddle Ridge Apartments, when the first increase occurred. In order to "lock-in" at the lower connection rates, Crofton sought to apply for water and sewer connection permits for each building in Saddle Ridge Apartments on the day before the fee increase, although neither water and sewer lines nor buildings were yet on the property. The application forms were returned to Crofton a week later, without comment. Crofton eventually paid connection charges based upon an application filed nearly a year later.

Crofton appealed appellee Anne Arundel County's (the County) refusal to recognize its first application to the Board. The Board determined that Crofton's appeal was untimely, and granted the County's motion to dismiss. Crofton then filed with the County a claim for a tax refund, asserting that the higher connection charge based upon the date of the later application was erroneously assessed. Crofton treated the County's failure to respond as a rejection of its claim, and

noted an appeal to the Tax Court of Maryland. The Tax Court determined that the County's assessment of the higher connection charges was proper and upheld the denial of Crofton's claim for a refund. Crofton's appeals from the decision of the Board and the decision of the Tax Court were consolidated in the Circuit Court for Anne Arundel County. The circuit court affirmed the decision of the Board, but failed to address Crofton's appeal from the Tax Court.

On appeal, Crofton presents us with the following questions:

1. Did the Circuit Court err in not reviewing the decision of the Tax Court, thereby depriving Appellant of its right to judicial review?

2. Did the Circuit Court err in affirming the decision of the County Board of Appeals dismissing the administrative appeal as untimely?

3. Is Crofton Partners entitled to a refund of $162,400.00 plus interest, because the County has retained this sum in violation of Article 6, § 5–208 of the Anne Arundel County Code?

For reasons hereinafter explained, we shall reverse the judgment of the circuit court.

### Background

On May 9, 1988, the County Council of Anne Arundel County approved and enacted Bill No. 22–88 for the purpose of "altering certain utilities charges, assessments, and fees." Among other things, Bill No. 22–88 amended Article 6, § 5–208 of the County Code, increasing the water and wastewater system connection charges and assessments on July 1 of each year from 1989 through 1992. In pertinent part, § 5–208 now reads:

(e) For connections to the County's water system, the capital facility connection charge for each single-family dwelling and each equivalent unit for a commercially or industrially zoned property is:

. . . .

(2) For properties with new improvements:

(i) For connection permits for which application is made on or after April 19, 1988, $1,900;

(ii) For connection permits for which application is made on or after July 1, 1989, $2,175;

(iii) For connection permits for which application is made on or after July 1, 1990, $2,450;

. . . . .

. . . .

(h) For connections to the County's wastewater system, the capital facility connection charge for each single-family dwelling and each equivalent unit for a commercially or industrially zoned property is:

. . . .

(2) For properties with new improvements:

(i) For connection permits for which application is made on or after April 19, 1988, $1,500;

(ii) For connection permits for which application is made on or after July 1, 1989, $1,625;

(iii) For connection permits for which application is made on or after July 1, 1990, $1,750;

. . . . .

Thus, prior to July 1, 1989, the total capital facility connection charge for both water and wastewater was $3,400. On July 1, 1989, however, that charge increased to $3,800, a difference of $400 per unit. Inasmuch as Crofton's proposed Saddle Ridge Apartments consisted of 406 units, Crofton could realize a potential savings of $162,400 if application were made before July 1, 1989.

In an attempt to realize these savings, Crofton submitted application forms to the County's Department of Utilities on June 30, 1989 for connection permits for each building in the Saddle Ridge Apartments. Whether the submission of these forms constitutes an "application made" under § 5–208 is the sole substantive issue upon which our determination of this

appeal turns.[1]  For some reason, it also appears to have been an issue to be avoided at all costs, judging from the sequence of events that followed.

At Crofton's insistence, the first application form was marked "Rec'd 6–30–89 3:00 Buildings 1 thru 11 D. Woodrow" and the forms were left with the Department of Inspections and Permits.  The forms were returned to Crofton about one week later, unaccompanied by a cover letter or correspondence of any sort.  Crofton met with various officials from the County's Department of Utilities in October 1989.  At this meeting, Crofton was advised verbally that the County did not consider Crofton's earlier submission to be an application, and that applications for connection permits could be made only after the water and sewer lines to which the housing units were to be connected had been installed and inspected by the County.  Notwithstanding this discussion, in November Crofton sent Trudy Yox, an official in the Department of Utilities, a letter setting forth its contention that the lower fees should be assessed and asking Ms. Yox to indicate her concurrence with Crofton's view by signing at the bottom of the letter. The County did not respond.

In January 1990, as required by Article 27, § 3–306(b) of the Anne Arundel County Code,[2] Crofton paid the connection charge in order to obtain a building permit.  The amount paid was based upon the higher fee imposed upon "applications made on or after July 1, 1989."  In a letter dated April 17, 1990, the County made a "formal reply to [Crofton's] written request regarding the water and wastewater capital facility

---

1.  We note that resolution of this issue will apply only to the immediate parties, as Article 6, § 5–208 of the Anne Arundel County Code was amended in 1991 to add subsection (r), which reads:

> An application for connection to a utility for new construction may not be made until a building permit is issued and any work required under a utility agreement is completed.

2.  Section 3–306(b) provides:

> Except as set forth in subsection (d) of this section [relating to owner-occupied single-family dwellings], a building permit may not be issued until all fees required by this subtitle are paid.

connection charges for Saddle Ridge Apartments." In its letter the County said "we cannot agree to your request" to accept payment of the lower charges, and continued:

As we indicated during our meeting, the County cannot accept an application for public water and wastewater service connections until the necessary lines are installed to serve your project. The water and wastewater lines for your project must be installed and accepted under the terms of our utility agreement before you submit your applications for the needed connection permits. Also, the dollar amount levied for a connection is established on the basis of the capital facility connection charge in effect at the time a connection is made to the utility line. The legal basis for this practice is set forth in Article 27, 3–309(c).[3]

Following construction of the utility lines and the buildings of Saddle Ridge Apartments, the County simultaneously accepted Crofton's applications for connection permits and issued them on June 30, 1990, one day prior to the next scheduled increase in the capital facility connection charges.

### The Decision of the Board of Appeals

### I.

Believing that the County's letter of April 17 represented a "final decision" by the County, Crofton noted an appeal to the Board on May 18, 1990. The County responded with a Motion to Dismiss, arguing, among other things, that the 30–day appeal period[4] began either on the date Crofton's first appli-

---

**3.** Section 3–309(c) reads:

Notwithstanding the provisions of subsections (a) and (b) of this section [requiring a payment of 25% of the capital facility connection charge within 60 days of final plat approval and requiring annual payments of at least one-fifth of the balance remaining due after that initial payment in order to preserve the water and wastewater capacity allocated to the subdivision], the capital facility connection charge in effect at the time a connection is made to a utility shall be paid in full prior to connection to the utility.

**4.** Anne Arundel County Code, Appendix B, Rules of Practice and Procedure of the County Board of Appeals, § 2–101(a) provides that

cation was refused, or on the date Crofton paid the higher capital facility connection charge. According to the County, its letter of April 17 "merely states the basis for refusing to receive [Crofton's] attempted applications on June 30, 1989" and is therefore not an appealable "decision."

The Board convened on October 15, 1990. After hearing argument concerning the County's Motion to Dismiss, the Board reserved ruling on that motion and heard Crofton's appeal on its merits. On January 4, 1991, the Board filed a Memorandum and Order of Dismissal, granting the County's Motion to Dismiss, reasoning that:

... We believe that [Crofton] should have taken the appeal within the 30 day period after January 10, 1990 when [it] paid the higher fee for the water and sewer connection. Although [Crofton] stated that [it] was negotiating with the county to obtain the lower connection costs, [it] states that [it] was not given any indication when [it] paid the higher fee that [it] would get a rebate. It is our opinion that [Crofton] had nothing to rely upon that the amount of money was negotiable, and the only manner in which [it] could assure some recourse, if [it] was dissatisfied with the decision of the Department of Utilities, would have been to appeal the payment of the greater amount within the required 30 days appeal period after payment was rendered.... Unfortunately, since [Crofton] did not take a timely appeal, this Board does not have jurisdiction to hear the matter.

Two members of the Board dissented, asserting that they "believe that the testimony given indicated that [Crofton] was negotiating in good faith with the county and did not believe that it was necessary to file an appeal until a final decision was rendered."

The Circuit Court for Anne Arundel County affirmed the decision of the Board of Appeals, and this appeal followed. In

"All appeals from orders or decisions from which an appeal is authorized by law shall be taken within 30 days of such an order or decision...."

order to determine whether the circuit court erred, we must repeat its task. *Mortimer v. Howard Research and Development Corp.,* 83 Md.App. 432, 442, 575 A.2d 750, 755, *cert. denied,* 321 Md. 164, 582 A.2d 499 (1990). In reviewing the decisions of a county Board of Appeals, the circuit court must determine whether the decision is "not in accordance with the law." Maryland Code, art. 25A, § 5(U) (1957, 1990 Repl.Vol.); *see also* Anne Arundel County Charter § 604 (1972). In short, was the Board's decision arbitrary, illegal, or capricious? *Mortimer,* 83 Md.App. at 441, 575 A.2d 750. A distinction is made, however, between reviewing an agency's fact finding and reviewing its legal conclusions:

> [T]he order of an administrative agency must be upheld on judicial review if it is not based on an error of law, and if the agency's conclusions reasonably may be based upon the facts proven. But a reviewing court is under no constraints in reversing an administrative decision which is premised solely upon an erroneous conclusion of law.

*Younkers v. Prince George's County,* 333 Md. 14, 19, 633 A.2d 861 (1993) (quoting *People's Counsel v. Maryland Marine,* 316 Md. 491, 496–97, 560 A.2d 32 (1989) (citations omitted)).

▪ What is at issue here is which of several events commenced the running of the 30–day appeal period. Therefore, the Board's determination that Crofton's appeal was untimely is a conclusion of law. Consequently, we need accord no deference to the Board's decision. *See Liberty Nursing Center, Inc. v. Department of Health & Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941 (1993) (no deference is appropriate and reviewing court may substitute its judgment for that of the agency when issue before agency is one solely of law).

## II.

▪ According to Article 27, § 2–508 of the Anne Arundel County Code, the fee for connecting water and wastewater facilities is determined by the date connection permits are applied for. Crofton asserts that its application was made on June 30, 1989. Conversely, the County asserts that Crofton's

application was not made until June 30, 1990. It is well established that the decision of an administrative agency or official must be final before it may be judicially reviewed. *U.S. Health, Inc. v. State,* 87 Md.App. 116, 120, 589 A.2d 485, *cert. denied,* 324 Md. 69, 595 A.2d 482 (1991). This requirement is not negated because we are here dealing with administrative review, rather than judicial review. The inquiry we must therefore make is when the County's decision that Crofton's submission of application forms on June 30, 1989 did not constitute an "application made" pursuant to § 2–508 was final.

Had the County explained in writing why it was returning Crofton's June 30, 1989 application forms, that explanation may well have constituted a final appealable decision. Implicit in the requirement that an appeal lies only from a final decision, however, are the correlative requirements that the aggrieved party know that the decision has been made and that the decision is final. *See Clarke v. Greenwell,* 73 Md.App. 446, 452–53, 534 A.2d 1344 (1988) (finding appeal time to have begun at point where "all parties are clearly informed of the time running for an appeal" is the "better result"). The County's unexplained return of Crofton's June 30, 1989 application forms did not constitute a final appealable decision.

We next evaluate the date chosen by the Board as constituting the County's "final decision," *i.e.,* the date Crofton's building permits were issued and the balance of the facility connection charges collected. If, as the County asserts, a valid connection permit application was not filed until June 30, 1990, the capital facility connection charges could not have been calculated until that date. Until that date, all payments toward the capital facility connection charges would simply have been estimates, subject to revision by the County when the charges became final. Upon plat approval in February 1989, Crofton was required to pay 25% of the connection charges in order to receive its water and wastewater alloca-

tion.[5] The amount paid, $345,100, was based upon the charges effective prior to July 1, 1989. No one contends that the connection assessment was final at that point. Neither then can the payment made in January 1990, based upon the charges effective prior to July 1, 1990, be considered a final assessment of charges. In the absence of anything more, neither estimated payment constitutes the County's final decision with respect to the total assessment.[6]

Thus, without further action by the County, there would have been no final appealable decision until the final calculation of the water and wastewater capital facility connection charges. If Crofton had appealed within 30 days of June 30, 1990, the date the County accepted its connection permit applications, the appeal would have been timely. We must now determine whether the May 18, 1990 appeal was premature.

The Court of Appeals has said that the action of an administrative agency "is final if it determines or concludes the rights of the parties, *or if it denies the parties means of further prosecuting or defending their rights and interests in the subject matter before the agency,* thus leaving nothing further for the agency to do." *Maryland Commission on Human Relations v. Baltimore Gas & Electric Co.,* 296 Md. 46, 56, 459 A.2d 205 (1983) (emphasis added). In its letter of April 17,

---

5. Anne Arundel County Code, Article 27, § 3–309(a)(1) reads:
    (a) ... [A] subdivider shall:
    (1) pay at least 25% of the capital facility connection charge no later than 60 working days after final plat approval....

6. As the County's position in its April 17, 1990 letter to Crofton indicates, § 3–309, enacted as part of Bill No. 72–88 on October 6, 1988, while apparently intended to govern the timing of payment for capital facility connection charges, can also be read as replacing the date *application for a connection permit is made* with the date the *connection is actually made* as the critical date for determining the appropriate connection charges.
    The issue of whether this is an appropriate interpretation is not presented to us in this appeal, as, despite the contents of its April 17, 1990 letter, the County apparently did not attempt to charge Crofton based upon its actual connection date. What the letter shows, however, is that the County did not consider the February payment to be final.

1990 to Crofton, the County said that it was making "a formal reply to your [Crofton's] written request regarding the water and wastewater capital facility connection charges for Saddle Ridge Apartments" and went on to say that "we cannot agree to your request to accept $1,900 per unit for water service and $1,500 per unit for wastewater service." These are the charges that would have been due had the June 30, 1989 application forms been accepted. We believe that Crofton was informed by this April 17, 1990 letter that the County had made a final determination that Crofton's June 30, 1989 submission of application forms was not an "application made" pursuant to § 2–508, and that any further pursuit of Crofton's claim to the lower rates would be futile. We therefore conclude that Crofton's appeal to the Board within 30 days of the County's April 17, 1990 letter was timely and shall reverse the judgment of the circuit court affirming the decision of Board of Appeals.

*The Proceeding in the Tax Court*

I.

Crofton sent the County a letter in February 1991 requesting a tax refund under Maryland Code, Article 24, § 9–710. Section 9–710 provides:

A claim for refund may be filed with the tax collector who collects the tax, fee, charge, interest, or penalty by a claimant who:

(1) Erroneously pays to a county or municipal corporation a greater amount of tax, fee, charge, interest, or penalty than is properly and legally payable;  or

(2) Pays to a county or municipal corporation a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner.

Such a claim for a tax refund may be made within three years of the tax payment being challenged. *Id.* §§ 9–711(b), 9–724. One who is unhappy with the determination of a claim for a refund may appeal to the Maryland Tax Court pursuant to Article 24, § 9–712(d). Section 9–712(d) provides:

(d) Appeal.—(1) Except as provided in paragraph (2) of this subsection, within 30 days after the date on which a notice is mailed, a person who is aggrieved by the action in the notice [of determination of the claim] may appeal to the Maryland Tax Court in the manner allowed in Title 13, Subtitle 5, Parts IV and V of the Tax–General Article.

(2) If a tax collector does not make a determination on a claim for refund within 6 months after the claim is filed, the claimant may:

(i)  Consider the claim as being disallowed;  and

(ii) Appeal the disallowance to the Tax Court.

Treating the County's failure to respond to its claim for a tax refund as a denial of its claim, Crofton appealed to the Tax Court. In its appeal to the Tax Court, Crofton contended that the County had erroneously assessed the increase of $162,400 in the connection charges occurring after Crofton's application of June 30, 1989.

In denying Crofton's request for a refund, the Tax Court looked to the introductory clauses of § 5–208(e)(2) and (h)(2), which provide that the specified rates are for "new construction." In doing so, the Tax Court reasoned that if it were to interpret the term "application" literally, the term "new construction" must also be interpreted literally. The Tax Court continued:

I tell you how I am construing that property [sic] or that language of the statute, is when it says with new improvements it doesn't mean contemplated new improvements necessarily. I think that what again the legislative intent was and what common sense dictates is that until the improvements are in place that are going to be serviced by, for instance, the water and sewer connection, that there is no reason for anybody to make application for a connection.

. . . .

And again, I simply cannot accept that if they weren't in a position to even have the application approved at that point in time, that I should construe this statute as meaning that the mere filing of it should lock in the rates.

## II.

We shall first address the County's Motion to Dismiss Tax Refund Claim, filed in response to this appeal. The County contends that as Crofton has "maintained [throughout these proceedings] that the County's letter dated April 17, 1990 is *final agency action* denying a refund of excess connection charges," Crofton should have appealed the denial of the refund within 30 days of that date.

The County's contention is disingenuous at best. The County here relies upon the very premise it contested vigorously before the Board and on appeal of the Board's decision. Moreover, the County's letter of April 17, 1990 was in response to Crofton's November 1989 letter to the County. Crofton's November 1989 letter to the County does not in any manner refer to a refund, but asserts Crofton's belief that its capital facility connection charges should be based upon the pre-July 1989 rates. As of November 1989, Crofton had paid only the 25% of the connection charges required to be paid upon final plat approval. That payment of $345,100 was based upon charges effective prior to July 1, 1989. Crofton has never challenged this payment. As the contested payment was not made until February 1990, Crofton's letter of November 1989 cannot be considered a "refund request" that the County denied by its letter of April 17, 1990.

Crofton's request for a tax refund was made by its letter of February 15, 1991. This was well within the three year period established by Article 24, § 9–724. When the County failed to respond to Crofton's letter within six months, Crofton was entitled to treat the County's silence as a refusal of its claim. Article 24, § 9–712(d)(2). Crofton then noted a timely appeal to the Tax Court.

## III.

Crofton also urges us to reverse the judgment of the Tax Court, inasmuch as the circuit court failed to act upon Crofton's appeal from the judgment of the Tax Court. The County contends that the judgment of the Tax Court was

correct. Although neither party has addressed the propriety of the Tax Court reaching a decision on the merits, as we believe the jurisdiction of the Tax Court to be in question, we shall raise and decide the issue *nostra sponte*. *County Council v. Supervisor of Assessments,* 274 Md. 116, 119, 332 A.2d 897 (1975).

By presenting to the Tax Court an appeal of the County's denial of its claim for a tax refund rather than an appeal of the County's assessment of the higher amount charged, Crofton was indirectly able to present the Tax Court with the exact issue then before the Board. Although the Board had not reached the merits of the claim before it, its decision was on appeal to the circuit court at the time Crofton appealed the County's denial of its claim for a tax refund to the Tax Court. Thus, an appeal of the same issue involving the same parties has arrived in Annapolis from two different forums.

In an appeal from a refusal to allow a claim for a tax refund, the Tax Court has jurisdiction to determine the underlying issue of whether a challenged tax assessment is invalid. *See Prince George's County v. White,* 275 Md. 314, 315, 340 A.2d 236 (1975) (finding Prince George's County resolution establishing amount of recordation tax invalid on appeal of unsuccessful claim for partial refund). On the other hand, Maryland Code (1988), § 13–514 of the Tax–General Article provides:

> Unless a person has exhausted all available administrative remedies before the appropriate tax determining agency, the person may not appeal to the Tax Court.

Had Crofton appealed the County's decision not to consider its submission of application forms on June 30, 1989 to be an "application made" under § 2–508, and the consequent assessment of higher connection charges to the Tax Court, § 13–514's exhaustion clause would have precluded Crofton from appealing to the Tax Court until its appeal to the Board had been exhausted.

It is not at all clear, however, whether and how, if at all, the exhaustion provision of § 13–514 should apply to a claim for a

tax refund. The legislature has provided for a direct appeal from the denial of a claim for a tax refund to the Tax Court. *Cf. Baltimore County v. Xerox Corp.*, 41 Md.App. 465, 471–72, 397 A.2d 278, *aff'd*, 286 Md. 220, 406 A.2d 917 (1979) (characterizing protest of tax assessment and request for a refund as "two separate and distinct administrative procedures"). Arguably, exhaustion of available administrative remedies in pursing a claim for a tax refund would be submitting the claim and having it determined by the appropriate tax collector. On the other hand, it is also possible that if there is an administrative means by which the underlying validity of the tax assessment may be determined, then a taxpayer would be required to pursue that remedy before appealing denial of a tax refund.

We need not determine, however, whether the exhaustion doctrine deprives the Tax Court of jurisdiction in the case *sub judice*. For even were we to find that the Tax Court has jurisdiction, the Board and the Tax Court would have concurrent jurisdiction and, for practical purposes, the result would be the same. Although it may not have been improper for Crofton to have brought its claim in both forums, once the Tax Court became aware that the issue was already before, and not yet resolved by, the Board, it should not have proceeded.

In the absence of extraordinary circumstances, once a circuit court or an administrative agency has assumed jurisdiction over a particular matter, a court or an agency with concurrent jurisdiction should not interfere with those proceedings. *State v. 91st Street Joint Venture*, 330 Md. 620, 628, 630, 625 A.2d 953 (1993). We apply that principle in this case to these administrative agencies because these agencies have concurrent jurisdiction and comparable expertise. In the case *sub judice*, the Tax Court was well aware of the proceedings before the Board and of the appeal of the Board's decision to the circuit court, because the entire transcript from the hearing before the Board was admitted into evidence by the Tax Court. When questioned by the Tax Court, counsel for both parties discussed, in depth, the procedural posture of the case. The Tax Court was fully informed that the issues presented to

the circuit court on appeal of the Board's decision reached both the question of the Board's jurisdiction *and* the merits of Crofton's claim. Yet, following this discussion, the Tax Court, without comment, called for Crofton's first witness.

As we see it, the proper action for the Tax Court would have been to stay the proceedings brought before it pending final resolution of the judgment of the Board, then on appeal to the circuit court. So long as there was any possibility that the appeal from the judgment of the Board would lead to a determination of Crofton's claim on its merits, it was beyond the province of the Tax Court to make its own determination of the same issue on the merits.

We shall therefore remand this matter to the circuit court with instructions to vacate the judgment of the Tax Court, and instruct the Tax Court to stay its proceedings pending resolution of Crofton's appeal to the Board on its merits.

APPELLEE'S MOTION TO DISMISS TAX REFUND CLAIM DENIED.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WITH INSTRUCTIONS TO 1) REVERSE THE JUDGMENT OF THE ANNE ARUNDEL COUNTY BOARD OF APPEALS AND REMAND TO THE BOARD OF APPEALS FOR A DETERMINATION ON THE MERITS, AND 2) VACATE THE JUDGMENT OF THE MARYLAND TAX COURT AND REMAND WITH INSTRUCTIONS TO THE TAX COURT TO STAY PROCEEDINGS PENDING THE OUTCOME OF THE PROCEEDINGS BEFORE THE ANNE ARUNDEL COUNTY BOARD OF APPEALS.

COSTS TO BE PAID BY APPELLEE.