30 A.3d 1017

Cheri MATTISON f/k/a Cheri Pruitt

v.

Rene L. GELBER, et al.

No. 1399, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Oct. 28, 2011.

Francis J. Collins (Kahn, Smith & Collins, PA, on the brief), Baltimore, MD, for Appellant.

David A. Roling (Wharton, Levin, Ehrmantraut & Klein, PA, on the brief), Annapolis, MD, for Appellee.

Panel: DEBORAH S. EYLER, MATRICCIANI, and ALAN M. WILNER (Retired, Specially Assigned), JJ.

WILNER, J.

Appellant filed a medical malpractice action in the Circuit Court for Prince George's County against appellees Teresa Rosas, as personal representative of the Estate of Dr. Henry Rosas, and Dr. Rene Gelber. The complaint alleged that Drs. Rosas and Gelber were negligent in their performance of thoracic surgery on appellant, for which she sought compensatory damages and court costs.

On appellees' motion, the case was removed to Howard County, where it was tried before a jury. The jury returned a verdict in appellant's favor against the Estate of Dr. Rosas in the amount of $811,162.73. Finding no liability on the part of Dr. Gelber, however, it returned a verdict in his favor. Those verdicts are not at issue in this appeal.

On April 9, 2010, immediately following the return of the verdicts, the trial judge and the court clerk signed two written judgments on what appear to be pre-printed forms.[1] On the form reflecting the verdict in favor of Dr. Gelber, the judge or clerk checked a box next to the statement "All relief is denied." A box next to the statement "Costs are assessed

---

1. Maryland Rule 2–601(a) requires each judgment to be set forth on a separate document. Upon a verdict by a jury allowing recovery only of costs or a specified amount of money or denying all relief, the clerk is to prepare, sign, and enter the judgment unless the court orders otherwise. In this case, both the clerk and the judge signed the judgments.

against" was not checked, however, and no specific mention was made of costs. The judgment form reflecting the verdict against Dr. Rosas's Estate recited that judgment was entered in favor of appellant against the Estate in the precise amount of the jury verdict—$811,162.73. As with the first document, the box regarding the assessment of costs remained unchecked and nothing was said about costs. Those judgments were entered as they were written.[2]

On April 16, appellant filed what was captioned Plaintiff's Motion For A New Trial, To Alter Or Amend The Judgment And To Revise The Judgment, but which sought only a new trial as to Dr. Gelber, principally on the ground of his failure to provide timely discovery responses. No relief was sought against the Estate of Dr. Rosas, and nothing was said about the failure of the court to assess costs.[3] Notwithstanding that the motion was docketed and shown as "entered" after the docket entry showing the judgment as entered, appellant, in what she claimed was an exercise in caution, filed a second motion, identical to the first, on April 30, 2010.[4] On May 24, the court entered an order denying "the Plaintiff's Motion." On May 27, 2010, the clerk entered on the docket that the second motion was denied although, despite a docket entry stating that copies of the order were mailed that same day, appellant claims that she did not receive a copy of the order until July 6, 2010.

On July 19, 2010, appellant filed a Motion for Entry of Final Judgment, in which she claimed that (1) the docket did not

---

**2.** There are several dates that pertain to these judgments. The written judgments state that they were "ordered and adjudged" on April 9, 2010, but that they were "issued" on April 16. They were stamped as "ENTERED" on April 20, but a docket entry made on April 23 states that they were both "issued" and "entered" on April 16, 2010.

**3.** In the motion, appellant alleged that Dr. Rosas's Estate was insolvent and that, because there was no insurance to cover the judgment, the judgment against the Estate was uncollectible.

**4.** Given the utterly confusing mess of dates regarding the entry of the judgments, we can hardly fault appellant for being prudent in this regard.

reflect that the court had ever ruled on the first motion for new trial, and (2) the court had not addressed the assessment of costs, as requested in the complaint. Those omissions, in her view, meant that "no final judgment has been entered in this action and the time for appealing has not yet begun to run." Relying on *Martin G. Imbach, Inc. v. Deegan*, 208 Md. 115, 117 A.2d 864 (1955), she averred that, under Maryland law, a judgment must include an award of costs to be considered final. She asked that the court enter a final judgment "consistent with the jury's verdict adjudicating all claims by entering an award of court costs to the Plaintiff (not including attorneys' fees)." In that regard, she said that she was not seeking a specific award of costs but only that the court rule on her request for costs so that a final judgment, adjudicating that claim, would be entered, making the judgment complete and thus allowing her to take an appeal. The actual amount of costs, she claimed, could be assessed by the clerk at a later time.

Dr. Gelber opposed the motion. He noted that the order denying the motion for new trial, on its face, made clear that the court had considered both motions. With respect to costs, he argued that the filing fee prepaid by appellant had been paid to the clerk in Prince George's County, where the case was first filed, that Dr. Gelber had paid a transfer fee of $60, that the court had discretion not to award costs to either party, and that the denial of the motions for new trial therefore constituted a final judgment in the case. On August 10, a summary order denying the motion for entry of final judgment was entered, and ten days later, on August 20, appellant noted this appeal which, she agrees, is solely from the denial of her motion to enter final judgment.

The only issues thus presented are (1) whether, in light of the absence of a docket entry, the first motion for new trial is still outstanding, and (2) whether, in light of the fact that appellant sought a recovery of court costs, in addition to compensatory damages, the failure of the court to rule on that request constituted a failure to adjudicate all claims in the action, thereby rendering the judgment forms signed on April

incomplete and thus, under Rules 2–601 and 2–602, depriving them of the status of judgments.[5]

## DISCUSSION

■ We shall consider first, and very briefly, appellant's contention that the first motion for new trial was never effectively resolved. There are two aspects to that argument—whether the court's order actually addressed that motion and, if so, whether the clerk's May 27 docket entry sufficed to record the court's decision. The order states, on its face, that the court had considered both the initial motion and the second motion, which were identical in all respects, and that "the Plaintiff's Motion" was denied.

Even if we were to assume that the first motion was not effectively withdrawn and replaced by the second and still retained some vitality, it is clear that the order was intended to constitute, and did constitute, a ruling on both motions, and the clerk obviously so regarded the order in making the docket entry. Because no issue was raised and no relief was sought in the first motion that was not also raised and sought in the second, the docket entry showing that the second motion was denied effectively encompassed a ruling that the relief sought in the first motion was also denied.

■ With respect to the matter of costs, we note, as a preface, that the issue relates only to the action against the insolvent Estate of Dr. Rosas.

Maryland Rule 2–603(a) states that, unless otherwise provided by rule, law, or court order, the prevailing party is entitled to costs. Dr. Gelber was unquestionably the prevailing party in the action against him, but, as he did not assert a claim for the $60 transfer fee he paid (or any other amount

---

5. That statement of the issues subsumes the two questions articulated in appellant's brief: (1) Is a court order that does not adjudicate the Plaintiff's demand for court costs a final judgment, starting the 30 day time for filing and appeal, and (2) Does the time for filing an appeal begin to run despite the fact that the Clerk's office has not made an entry on the Court's docket denying a motion for new trial?

that properly may be considered as a court cost), there was no basis for assessing any cost either in favor of or against him. The judgment document signed by the judge and the clerk reflects that and necessarily covers the matter of costs. As noted, the box stating "[a]ll relief is denied" was checked. That is clearly a ruling that appellant was not entitled to recover costs from Dr. Gelber, and, even if Dr. Gelber *had* requested an award of costs, that relief also was denied. There was no reason to say anything more. In that regard, there remain no open issues with respect to the action against him.

■ The issue with respect to the action against the Estate of Dr. Rosas is not so facially clear. Appellant was unquestionably the prevailing party in that action; it appears that she had paid a $115 filing fee to the clerk in Prince George's County; and she did demand costs in her complaint. This issue, and this appeal, could have been avoided entirely if the judge, having decided to sign the judgment form, had paid attention to the box on the pre-printed judgment form and decided whether to award costs against the Estate. The judge did not, however, so it falls on us to determine the effect of her not doing so.

To understand the import of silence by the court, one needs to appreciate the elements that factor into the determination of costs and who will bear ultimate liability for them and the respective roles of the judge and the clerk in that determination. The starting point, in circuit court cases, is Rule 2–603(a) which, as noted, provides, generally, that the prevailing party is entitled to costs but that "[t]he court, by order, may allocate costs among the parties."

The services performed by *clerks* for which costs are assessed and the amount to be collected by the clerk for those services are set forth in a Schedule adopted by the State Court Administrator, with the approval of the Board of Public Works, all as authorized by Maryland Code, § 7–202 of the Cts. & Jud. Proc. Article (CJP). The Schedule is printed in

the Code immediately following that section.[6]  In addition, until this year, § 7–202 imposed a "surcharge" of $25 that must be collected in civil cases, which made the initial cost to be collected $105 (plus any appearance fee assessed in the county).[7]

In addition, CJP § 7–402 requires sheriffs to collect certain fees for the service of various papers and for conducting execution and attachment sales.  Fees paid or payable to the sheriff for the service of papers prior to the entry of judgment are also subject to assessment and allocation pursuant to Rule 2–603.

Rule 2–603(b) requires the clerk to "assess as costs all fees of the clerk and sheriff" and statutory fees paid to witnesses plus, on written request, "other costs prescribed by rule or law," and to "notify each party of the assessment in writing." The Rule also provides that, on motion of a party filed within five days after receipt of the notice of "the clerk's assessment," the court shall review the action of the clerk.  Apart from the fact that the Rule is out-of-date with respect to the assessment of statutory witness fees,[8] it appears that some clerks are reluctant to add to the amount of a judgment entered by the court an amount for costs collected by or owed to the clerk or sheriff unless the judge has specifically allocated costs against the defendant (or some other party).  That was apparently the case here;  as noted, the judgment was

---

**6.** *See* also CJP § 7–401, requiring clerks to collect in advance certain other fees for proceedings involving the examination of a judgment debtor.

**7.** Effective July 1, 2011, the surcharge was increased to $55, making the initial cost of filing $135 (plus any appearance fee).

**8.** In 2005, the General Assembly repealed the statute providing for a fee to be paid for witnesses.  Also, it appears that the clerks ordinarily do not collect the fees chargeable by the sheriff for the service of summonses or other documents.  The sheriffs collect or invoice those fees themselves.  That does not mean, of course, that the clerk is unable to ascertain from the sheriff what fees have been paid or are owing and by which party.

entered in precisely the amount of the verdict with nothing said about costs.

It may well be that plaintiffs who have recovered a collectable judgment or defendants who have escaped liability may not care whether they are reimbursed for relatively modest fees they have paid and do not ordinarily press the issue, but the issue is still there, and it may affect whether there is, in fact, a judgment under Rule 2–602. That is, at least facially, the problem complained of by appellant here.

Dr. Gelber's argument is plain and straight-forward. He notes that Rule 2–603(a) entitles the prevailing party to costs unless the court orders otherwise and that the court here did not order otherwise. He contends therefore that, as a matter of law, costs were awarded in appellant's favor against Dr. Rosas's Estate. He thus regards the entitlement in Rule 2–603(a) as essentially self-executing in the absence of a contrary order, and, as a result, concludes that the judgment entered on the docket on or about April 16, 2010 was indeed complete and resolved all claims against all parties. The court, in his view, properly denied the motion to enter final judgment because final judgment had been entered four months earlier.[9]

Appellant counters, as she did below, that *Martin G. Imbach v. Deegan, supra,* 208 Md. 115, 117 A.2d 864, 865 makes clear that such a conditional entitlement is not self-executing and that, if a claim for costs is not resolved by the lower court, there is no judgment. Appellant reads a bit too much into *Deegan.* The case was a suit at law to recover poundage fees alleged to have been collected coercively and unlawfully from the plaintiff by the sheriff of Baltimore City. The trial court sustained the sheriff's demurrer, in effect ruling as a matter of law that there was no viable cause of action.

Under long-standing precedent, an order merely sustaining a demurrer did not constitute a judgment; rather, it was

9. Although the Estate of Dr. Rosas is also an appellee, it has chosen not to file a brief or otherwise participate in the appeal. We are left, therefore, only with the argument by appellant and Dr. Gelber.

required in that situation that the court implement that order by entering a judgment for costs in favor of the defendant. That had not occurred in *Deegan*, so, when the case first came before the Court of Appeals, the Court dismissed the appeal for want of a judgment. It was not a situation in which an order or docket entry purporting to be a judgment was entered but was incomplete because fewer than all claims had been resolved, which is the contention here, but one in which no judgment at all had been entered on any claim. That is made abundantly clear by the cases cited and relied upon by the *Deegan* Court, 208 Md. at 119, 117 A.2d at 865.

What is more instructive is the history of Rule 2–603(a) and (b) and the relationship of those Rules to Rule 2–601. The initial predecessor of Rule 2–603(a) was adopted in 1957 as Rule 604. It stated that, unless otherwise provided by law or ordered by the court, the prevailing party was entitled to the allowance of court costs, "which shall be taxed by the clerk and embraced in the judgment." The Rule added that the action of the clerk in "taxing" costs could be reviewed by the court. An Editor's Note stated that the Rule was new, that it was consistent with the pre-existing rule in equity cases, but that it was a liberalization of the case law regarding costs in an action at law. The note observed that "[i]t would appear from the earlier cases that the law court had no choice but to award the costs to the prevailing party." [10] What was new

---

**10.** The adoption of Rule 604 in 1957 was part of a comprehensive rewriting of the Maryland Rules, and nearly all of the 1957 Rules contained descriptive Editor's Notes. The adoption of those Rules was contemporaneous with the publication of the new 1957 Annotated Code by the Michie Company, and the Rules were included in a volume (Volume 9) of the new Code. As they did for the statutes in the Code, the editors at Michie prepared, for the first time, annotations to the Rules, but, because many of the Rules were new or had new provisions, there were few case citations; most of the annotations were in the form of Editor's Notes that sometimes summarized existing case law. An introductory Editor's Note to what was then Rule 1 noted that the annotations were developed largely by Frederick W. Invernizzi, who then was the Reporter to the Rules Committee and had been privy to the discussions that led to the crafting of the Rules (and who later became a member of the Committee and went on to serve as State Court Administrator and a judge of the District Court of Maryland).

was the equitable discretion of the court to award costs differently in law actions.  *See Baltimore County v. Xerox Corp.*, 41 Md.App. 465, 477, 397 A.2d 278 (1979).

Under the pre–1957 approach, as described in the Editor's Note, an argument that the entitlement of the prevailing party to an allowance of costs was self-executing would have considerable merit, at least in cases at law.  Except for the purpose noted in *Deegan,* the court did not have to make any allocation of costs, because it had no discretion to depart from the mandated result.  Even under the 1957 Rule, which lasted until 1984, an argument that the entitlement was self-executing, at least in the absence of any contrary order of the court, continued to have force, as the clerk was directly instructed to ascertain the costs and "embrace" them in the judgment.

The Maryland Rules governing civil and criminal procedure were comprehensively revised in 1984, and some additional changes to the judgment Rules were made in 1986.  In the 1984 revision, a new Rule 2–601 on judgments generally was adopted, and Rule 604 was replaced by Rule 2–603.  Both of those Rules have an impact on the issue before us.

As adopted by the Court in 1984, Rule 2–601(a) provided that, upon a general verdict of a jury or a decision by the court allowing recovery of a sum certain or costs or denying all relief, the clerk was to enter the judgment forthwith unless the court ordered otherwise.  Rule 2–603(a) kept intact most of the language from the prior Rule, including an entitlement of the prevailing party to "the allowance of costs," but deleted the direction that the costs were to be "taxed by the clerk and embraced in the judgment."  Section (b) of Rule 2–603 provided that, on written request of a party, the clerk was to "assess as costs" the fees of the clerk and the sheriff, statutory fees paid to witnesses, and costs prescribed by Rule or law and to notify each party of the assessment. On motion of a party, the

There still are some Editor's Notes sprinkled throughout the Rules, but there are far fewer of them and they are less descriptive.  Relevant Commentary now is provided more by Committee Notes that have been approved by the Rules Committee and adopted by the Court of Appeals.

court was to review the action of the clerk. Proposed section (c) provided for the kinds of costs that could, or must, be assessed by the court, not the clerk—such things as the cost of court-appointed experts, interpreters, and transcripts.

The changes to Rule 2–603 had a purpose. As reflected in the minutes of the Rules Committee meeting of November 20–21, 1981, although section (a) restated the general principle of then-existing Rule 604 that the prevailing party was entitled to an allowance of court costs, section (b) was intended to "significantly reduce the role of the clerk in assessing costs." Under Rule 604, *all* assessment of costs, other than those imposed as sanctions, were to be made by the clerk, which led to the "undesirable consequence of court clerks being called upon to decide, at least preliminarily, contested issues between attorneys which may involve analysis of the case and the trial." Under the proposed section (b), the clerk would assess "only the standard costs to be paid to the clerk and court officers" and "[a]ll other costs are to be assessed by the court under section (c)." *Minutes of Standing Committee on Rules of Practice and Procedure,* November 20–21, 1981, at 28–29.

In September 1985, the Rules Committee, in its 92nd Report, transmitted to the Court a number of proposed amendments to Rules 2–601 and 2–603. During an initial hearing on that Report, in January 1986, some members of the Court expressed concern as to whether an order intended and docketed as a judgment would fail to achieve that status because costs had not yet been assessed. As noted in the Rules Committee's minutes of February 14, 1986, at 46:

"The Court referred Rule 2–601 back to the Committee for review of section (a) [to] be clarified, as necessary, to avoid any implication that a final order is not a judgment simply because costs have not been assessed. The Court also suggested that an automatic assessment of costs by the clerk, unless the court orders otherwise, might be preferable to the Rule 2–603 provision requiring a written request for the assessment of costs."

At the Committee's next meeting, on March 14–15, 1986, the first concern was addressed by proposing, as an addition to Rule 2–601(a), "Unless the court orders otherwise, entry of the judgment shall not be delayed pending a determination of the amount of costs." That provoked a discussion as to whether an order otherwise final would constitute a judgment if costs had not yet been assessed, the sentiment of the Committee being in the affirmative—that costs would inherently be part of the judgment even if an appeal were taken prior to their actual assessment. The suggestion was made to add an explanatory note to that effect, but the clerk member of the Committee advised that, at least in his office, judgments were always accompanied by the language "with interest from the date of judgment *and costs.*" (Emphasis added).

As to whether a written request should be required, the Committee recommended that the clerk automatically assess known costs—the fees of the clerk and the sheriff—but that a request be required for the assessment of any other costs prescribed by Rule or law. *Minutes of Standing Committee on Rules of Practice and Procedure* March 14–15, 1986, at 6–10. During the discussion of Rule 2–603, a question was raised why the proposed revision referred to the clerk "assessing" costs, rather than "taxing" them, as Rule 604 had done and as Fed. R.Civ. Pr. 57 then did, to which the Chair of the Judgment Subcommittee responded that "taxing" was avoided because it connoted more the Federal Government.

These conclusions were transmitted to the Court of Appeals on March 18, 1986. The Committee recommended an addition to Rule 2–601(a) stating that "[u]nless the court orders otherwise, entry of the judgment shall not be delayed pending a determination of the amount of costs." The transmittal letter noted that the new sentence was patterned on a similar provision in Fed. R. Civ. Proc. 58 and that "[u]nder this provision costs may be included in the judgment even though the amount of the costs has not been ascertained at the time the judgment is entered." With respect to Rule 2–603, the Committee advised that "in light of the Court's suggestion that an automatic assessment of costs by the clerk may be

preferable to the provision requiring a written request," the Committee was proposing amendments to sections (a) and (b). It advised further:

"The proposed deletion in section (a) is designed to clarify that, unless the court otherwise directs, the clerk may enter the judgment 'with costs' for the prevailing party whether or not the amount of the costs has been computed at the time the judgment is entered. The proposed amendments in section (b) are designed to drop the requirement of a written request for the clerk's assessment of the standard court costs."

The Committee's recommendations were adopted by the Court and form part of current Rules 2–601(a) and 2–603(b).

This history reveals a clear intent that (1) the clerk, on his or her own initiative, would ascertain (assess) the amount of costs that had been paid or were owing to the clerk, the sheriff, and, at the time, witnesses, (2) on request of a party, the clerk would ascertain (assess) the amount of any other costs prescribed by Rule or statute, (3) unless the court allocated costs in some other fashion, the prevailing party who had paid or owed them would be entitled to them, (4) although entry of a final order or decision as a judgment would not be delayed while the assessment process was under way, the costs ultimately assessed would be part of the judgment, and (5) an appropriate way to implement that intent would be for the clerk to follow the practice of adding to the judgment such language as "with costs," unless, of course, the court ordered otherwise.

In this case, the clerk failed to add such language, perhaps out of some uncertainty arising from the judge's failure to check the box relating to costs or to say anything else about them. That kind of uncertainty may well arise from a change to Rule 2–601 made after 1986. In 1997, the Court added the requirement to Rule 2–601(a) that each judgment be set forth on a separate document. As noted, where the verdict or court decision is for a specified sum of money or a denial of all relief, the clerk is supposed to prepare, sign, and enter the judg-

ment, unless the judge orders otherwise. In this case, the judge decided to sign the judgment and neglected to say anything about costs. The clerk may well have been reluctant to add costs when the judge declined to do so.

Nonetheless, as the Rules currently are worded, especially in light of the history we have recounted, in the absence of an order to the contrary, the clerk is obliged to ascertain (assess) and add to a judgment in favor of the prevailing party, without request, those costs that the prevailing party had paid, or still owed, to the clerk or the sheriff.[11] It is a ministerial function which, as was made clear to the Rules Committee in 1986, easily can be performed by adding to the judgment the words "with costs" or some similar language. If any party believes that the clerk has performed that task improperly, the party has the ability to file a motion and seek the court's review.

We shall affirm the court's ruling denying the motion to enter final judgment. Such a judgment was entered in April 2010, and it became appealable when the court denied the motions for new trial. We shall, however, remand the matter to the Circuit Court with instructions to direct the clerk to assess costs in conformance with Rule 2–603(b) and to note that amount on the docket as part of the judgment against the Estate of Dr. Rosas. As appellee Gelber has conceded that those costs were included in any event as a matter of law and as Dr. Rosas's Estate has failed in this appeal to mount any challenge to such a result, we can perceive no prejudice to any party from such a directive. It is in the nature of a ministerial correction to conform the docket to the requirements of the Rule.

ORDER DENYING MOTION TO ENTER FINAL JUDG-
MENT AFFIRMED; CASE REMANDED TO CIRCUIT
COURT FOR HOWARD COUNTY FOR CORRECTION OF
THE DOCKET IN CONFORMANCE WITH THIS OPIN-
ION; COSTS TO BE PAID BY APPELLANT.

---

11. Even costs ordinarily required to be prepaid may remain open if the costs were initially waived under Rule 1–325 due to the indigence of the person then responsible for paying them.